**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| K&M INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>- against -<br><br>RHODE ISLAND NOVELTY, INC. and WILD ADVENTURES, INC.,<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>[redacted] 06 159 |

Plaintiff, K&M International, Inc. ("K&M"), for its Complaint against Rhode Island Novelty, Inc. ("RINCO") and Wild Adventures, Inc. ("Wild Adventures") (collectively, "Defendants"), alleges as follows:

NATURE OF THE ACTION AND RELIEF SOUGHT

1. It is often said that "imitation is the sincerest form of flattery." In this case, however, Defendants have used imitation as a means to compete unfairly with K&M in violation of the Lanham Act, the Copyright Act and state law.

2. K&M is a leading designer of high-quality plush and PVC toys bearing the well-known WILD REPUBLIC house mark, among others. K&M, through its Wild Republic division, distributes toys to retail toy stores and gift shops throughout the country and worldwide, with a particular emphasis on zoos, museums and aquariums (the "ZMA Market").

3. Defendant RINCO is an importer of novelty and other toys that are distributed primarily to carnivals, circuses and parade vendors. Upon information and belief, last year RINCO sought to enter into the ZMA Market, a market long dominated by K&M. Either unable or unwilling to compete against K&M fairly and on a level playing field, RINCO instead

took a more expeditious approach, resorting to a series of unfair business practices, including, but not limited to, the serial imitation and copycatting of the look of K&M's entire product line, trademarks, copyrights and marketing and promotional materials. Indeed, RINCO established a new division to sell the exact same products as K&M (at a lower cost) and named it "Wild Adventures," a name that is confusingly similar to K&M's incontestable, federally-registered trademark WILD REPUBLIC. RINCO also hired K&M's former ZMA Account Executive, Andrew Alberto, to be the sales manager for Wild Adventures. Upon information and belief, Mr. Alberto disclosed and has used K&M's trade secret and confidential information to develop the business of Wild Adventures.[1] Wild Adventures now actively solicits business from K&M's existing and potential customers in the ZMA Market in an effort to sell toys that infringe K&M's copyright and trademark rights.

4. Defendants' conduct cannot be explained by sheer coincidence, nor is it merely fair competition. It is a calculated and intentional effort unquestionably designed to trade off of K&M's innovation, hard work and goodwill, create confusion in the marketplace, divert profits away from K&M and diminish the novelty and distinctiveness of K&M's products. K&M brings this action to halt Defendants' unfair tactics and to recover monetary damages for the extensive harm that Defendants' illicit behavior has caused, and continues to cause, K&M. K&M seeks injunctive relief and damages as a result of Defendants' acts of: (a) trademark infringement, trade dress infringement, false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and the common law; (b) violations of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*; (c) unfair competition under state law and the

[1] On November 15, 2005, K&M brought a separate action against Mr. Alberto in Ohio seeking to enforce a series of confidentiality and non-competition agreements that Mr. Alberto had entered into with K&M. The parties ultimately resolved the matter amicably and the court entered a Final Judgment on January 5, 2006 restraining Mr. Alberto from working for Wild Adventures and RINCO until April

common law; (d) tortious interference with contract and business relations under the common law; and (e) unjust enrichment under the common law.

## PARTIES

5. K&M is a corporation organized and existing under the laws of the State of Ohio, having an address and principal place of business at 1955 Midway Drive, Twinsburg, Ohio 44087.

6. Upon information and belief, RINCO is a Rhode Island corporation having an address and principal place of business at 5 Industrial Road, Cumberland, Rhode Island 02864. Upon information and belief, RINCO is the parent company of Wild Adventures and has directed the activities of Wild Adventures at all relevant times herein.

7. Upon information and belief, Wild Adventures is a Rhode Island corporation having an address and principal place of business at 5 Industrial Road, Cumberland, Rhode Island 02864. Upon information and belief, Wild Adventures is a division/subsidiary of RINCO that has engaged in the acts of copyright and trademark infringement, unfair competition, tortious interference and unjust enrichment complained of herein in the State of Rhode Island and throughout the United States.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338 and 15 U.S.C. § 1121. The Court has supplemental jurisdiction over the state law and common law claims under 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a).

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

---

15, 2006.

## FACTS COMMON TO THE COUNTS

I. K&M's Valuable Intellectual Property Rights

10. K&M designs popular plush, PVC and other toy products featuring a wide variety of wild animals, dinosaurs and other fanciful creatures. K&M distributes these products to retail toy stores and gift shops across the United States and worldwide through its Wild Republic division. (A copy of the 2005 catalogue for Wild Republic is included in Exhibit Binder attached hereto at Tab A). K&M's toy products are distributed for retail sale in all channels of trade where toys are sold, yet the core of K&M's business is the ZMA Market. The company also maintains a popular Internet web site located at www.WildRepublic.com on the Internet. The site serves as a major promotional vehicle for K&M's toy products.

11. K&M/Wild Republic has adopted the following Mission and Vision Statements:

> We at Wild Republic strive to educate the younger generation about the beauty and wonders of our animal kingdom in a fun and creative manner. We accomplish this by providing a wide range of creative and innovative toys that help spark the imagination and make learning fun yet affordable.
>
> *    *    *    *    *
>
> Wild Republic is driven to be among the leaders in providing quality education to our children (the global community) about the wonders of the wild, through our range of toys. We are constantly exploring new horizons to provide a fun and exciting environment to learn in.

12. K&M has established strong trademark rights in the term "WILD" for use in connection with plush, PVC and other toy products. K&M is the owner of the following trademarks incorporating the term "WILD":

(a) Since January 1, 1999, K&M has used the trademark WILD REPUBLIC as a house mark on all of its many toy product lines. K&M is the record owner of U.S. Trademark Registration No. 2,376,072 for the trademark WILD REPUBLIC for use in connection with "toys

and games, namely stuffed animals and soft-sculpture animals" in Int'l Class 28 on the Principal Register. (A copy of K&M's trademark registration certificate is included in Exhibit Binder attached hereto at Tab B). Said registration issued in 2000 and has become incontestable. As an incontestable mark, WILD REPUBLIC is presumed to be distinctive and to have acquired secondary meaning. Irrespective of such presumption, the mark WILD REPUBLIC is inherently distinctive and has acquired strong secondary meaning in the minds of the consuming public such that the WILD REPUBLIC mark designates goods of high quality emanating from a single source, K&M, because of the mark's length of use, the amount of sales of products bearing the mark and K&M's efforts to market, advertise and promote the mark to retailers and consumers.

(b) K&M is also the record owner of the following federal trademark registrations: (i) No. 2,776,601 for the mark WILD EXPLORERS for "toys and games, namely stuffed animals and soft-sculpture animals" in Intl. Class 28, registered on October 21, 2003; (ii) No. 2,666,393 for the trademark WILD REPUBLIC SPARK YOUR IMAGINATION & Design for "toys, namely plush toys, stuffed toys, and puppets in the shape of various animals" in Int'l Class 28, registered on December 24, 2002; and (iii) No. 2,376,071 for the mark THE HUG OF THE WILD for "toys and games, namely stuffed animals and soft-sculpture animals" in Int'l Class 28, registered on August 8, 2000. (Copies of these registrations are included in Exhibit Binder attached hereto at Tab C).

13. K&M also uses many other trademarks to designate the source of origin of its animal toy products, including, without limitation, the marks WILD CLINGERS and CUDDLEKINS for use in connection with lines of plush animal toys. (*See* Tab A pp. 2-7). These marks are inherently distinctive and have built up strong secondary meaning as designating high quality goods coming from a single source, namely K&M.

14. K&M also owns rights in the distinctive designs and packaging of many of its animal toy product lines. The protectable elements encompass the design and appearance of the toy designs and packaging together with all non-functional elements that comprise the overall image that serves to identify the product presented to the consumer as designating a product coming from a single source of origin. The toy lines include the following:

(a) Plush Toy Animal Lines: These encompass several different lines of plush toys representing a broad spectrum of the animal kingdom, ranging from bears and tigers to snakes and hanging monkeys. The lines are "Cuddlekins," "Plush Snakes," and "Hanging Plush." (*See* Tab A pp. 2-19).

(b) "Pinchers": A line of plastic animal toys with a distinctive animal's head on the top, a long cylindrical tube in the middle and a handle at the bottom allowing a child to open and close the animal's mouth. (*See* Tab A pp. 54-55).

(c) "Paint & Play Sets": A line of paint kits featuring small PVC animals, paint and a brush. The line includes six different types of animals to paint, such as aquatic, dinosaurs and jungle animals. (*See* Tab A p. 61).

(d) "Nature Tubes": A line of small PVC animals housed in a long, cylindrical clear plastic tube depicting the WILD REPUBLIC logo on the top and a drawing of the animal on the bottom. The line features different themes such as snakes, sharks, dinosaur and farm animals. (*See* Tab A pp. 78-79).

15. Each of the above-described toys and toy lines has a unique and distinctive style and distinctive characteristics. As a result, each toy and toy line is known for and recognized by the total image that is presented by its product design and the style and arrangement of the packaging and display. The public recognition of the design of the products and packaging have

been enhanced over the years through efforts to market, advertise and promote the products. The characteristics of these toys and toy lines have come to identify them and their source, K&M, and thus serve as protectable trade dress.

16. The toys and toy lines described above are K&M's original creative works and the company owns valuable copyright rights related thereto. K&M is the record owner of copyright registrations related to the toy products. (Copies of the registration certificates issued by the Copyright Office are included in Exhibit Binder attached hereto at Tab D and are incorporated herein by reference).

II. Defendants' Infringement and Acts of Unfair Competition

17. Defendant RINCO is an importer of novelty and other low-cost toy items that traditionally have been distributed primarily to carnivals, circuses and parade vendors.

18. K&M first became aware of RINCO and its unscrupulous business practices in the year 2000. At that time, K&M discovered that RINCO was distributing in the U.S. plush toy monkeys with an appearance virtually identical to K&M's Gibbons hanging plush toy monkeys. K&M, through legal counsel, sent a cease and desist letter to RINCO on September 12, 2000, alleging that RINCO's acts violated K&M's copyright rights and demanding that RINCO cease further distribution and sale of the accused products. (A copy of the letter is included in Exhibit Binder attached hereto at Tab E). Thereafter the parties sought to negotiate an amicable resolution over a period of several months, but no deal was ever reached. K&M made a business decision not to bring an action for copyright infringement against RINCO at that time because RINCO's sales of the infringing plush toy were de minimis, RINCO operated in a totally different market from K&M (*i.e.* carnivals versus retail toy stores and the ZMA Market), and the alleged infringement only involved a single toy product.

19. K&M lost track of RINCO until last year when K&M discovered that, upon information and belief, RINCO took steps to squarely compete with K&M (or in reality to attempt to convince retailers and consumers that they were K&M or that the parties' products emanated from the same source).

20. Just like K&M, RINCO established a new division to sell its line of plush, PVC and other toy products. RINCO named the division "Wild Adventures," a name sharing the same first word as K&M's well-known WILD REPUBLIC family of trademarks. Wild Adventures also adopted a Mission Statement that bears a striking resemblance to K&M's:

> Wild Adventures is a manufacturer of quality education products that enhance children's desire to learn and increase their global awareness. Each of our products is created to stimulate children's imagination and creativity, while maintaining the highest quality and product safety standards found in the industry today.

21. RINCO engaged in the serial imitation and copycatting of the look of K&M's entire product line. (A copy of Wild Adventures' 2005 product catalogue is included in Exhibit Binder attached hereto at Tab F). Just like K&M, Wild Adventures is now selling several lines of plush animal toys, a line of plush hanging monkey toys, a line of "pinchers," a line of paint kits and a line of small PVC toys in a clear plastic tube, as follows:

| Wild Republic Line | Wild Adventures Line |
| --- | --- |
| Cuddlekins/Fuzzy Fellas | Pounce Pals/Plush |
| Plush Snakes | Plush Snakes |
| Hanging Monkey/Aquatic | Hanging Monkey |
| Pinchers | Jumbo Pinchers |
| Paint & Play Sets | Paint & Glow Box Set |
| Nature Tubes | Tubulars |

(*See* Tab F pp. 1-11, 16-18, 24-25, 34). Making matters worse, each of the animals in Wild Adventures' line corresponds to the same type of animals in the corresponding K&M line. For example, K&M's line of tube toys features a distinct type of animal in each container, such as snakes, sharks, dinosaurs or farm animals, among others. Wild Adventures' line is structured the exact same way. And Wild Adventures' plush toy and plush hanging monkey toy lines contain the same types of animals as K&M's as well. Further adding insult to injury, in virtually all cases the Wild Adventures' toys have a substantially similar appearance to the look and feel of K&M's toys. In addition, one of K&M's customers reported to K&M that Wild Adventures contacted them offering to sell them a "Cuddlekins" toy – the very same mark owned and used by K&M. This can hardly be a coincidence.

22. In a direct shot across K&M's bow, RINCO hired K&M's former ZMA Account Executive, Andrew Alberto, to be the sales manager for Wild Adventures in 2005. Upon information and belief, Mr. Alberto disclosed and has used K&M's trade secret and confidential information to develop the business of Wild Adventures.

23. The parties are now direct competitors. Wild Adventures now actively solicits business from K&M's existing and potential customers in the ZMA Market in an effort to sell the exact same toys as K&M, with the same look and feel, at a much lower price. Wild Adventures has also attended the same trade shows as K&M in Tennessee in 2005 and in New York City in 2006. Like K&M, Wild Adventures now maintains an Internet web site to promote and sell its products, located at www.WildAdven.com.

24. Wild Adventures' business model is all too clear – hire K&M's former sales manager to learn K&M's trade secrets and confidential information, adopt a confusingly similar trademark to WILD REPUBLIC, copy K&M's product line and then offer those same products

to K&M's customers at an artificially low price, all in an effort to confuse the trade and consumers and to divert profits from K&M. Defendants' actions are the essence of unfair competition.

25. Several of K&M's customers have reported to K&M that Wild Adventures approached them to sell the products listed in Wild Adventures' catalogue. The customers admitted to a mistaken belief regarding a potential relationship between Wild Adventures and Wild Republic/K&M. This is just the tip of the iceberg. Wild Adventures' serial copycatting of K&M's products and use of a confusingly similar name are likely to totally confuse the retail trade and consumers.

26. The continued sale of Defendants' product is likely to cause confusion, mistake and/or deception as to the source of origin of Defendants' products in that the public, the trade and others are likely to believe that Defendants' products are K&M's products; and/or that the parties' products are provided by, sponsored by, approved by and/or licensed by the same source; and/or are provided by, sponsored by, approved by, licensed by, affiliated with or in some other way legitimately connected to K&M, the Wild Republic division or the WILD REPUBLIC trademark.

27. Moreover, Defendants' continued sales of unauthorized, infringing products is depriving K&M of the ability to control the use of its valuable intellectual property. Upon information and belief, Defendants' products are inferior in quality to K&M's, As such, it is likely that the WILD REPUBLIC brand will be tarnished by the public's association of the brand with the lower-quality products of Defendant.

First Cause of Action

TRADEMARK INFRINGEMENT

28. K&M repeats and re-alleges each and every allegation of paragraphs 1 through 27 as though fully set forth herein.

29. Defendant's use of the designation "WILD ADVENTURES" as a trademark, service mark and trade name constitutes willful and deliberate infringement of K&M's federally registered trademark for WILD REPUBLIC, in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and the common law.

30. Defendant's use of the trademark CUDDLEKINS constitutes willful and deliberate infringement of K&M's trademark for CUDDLEKINS, in violation of the Lanham Act, 15 U.S.C. § 1125(a), and the common law.

31. As a direct and proximate result of the foregoing acts of Defendants, K&M has been damaged and has suffered and will continue to suffer immediate and irreparable harm. Unless restrained by the Court, Defendants will continue to cause irreparable injury and damage to K&M and to the goodwill associated with K&M's trademark. Plaintiff is without an adequate remedy at law.

Second Cause of Action

LANHAM ACT SECTION 43(a)

32. K&M repeats and re-alleges each and every allegation of paragraphs 1 through 31 as though fully set forth herein.

33. Through its unauthorized use of trade dress that is virtually identical to the trade dress owned by K&M, Defendants are knowingly and intentionally misrepresenting, falsely designating and passing off to the general public the nature, origin, and source of their products

and intend to misrepresent, falsely designate and pass off to the general public the nature, origin and source of the goods, so as to create a likelihood of confusion by the public as to the nature, source and sponsorship of the goods.

34. Defendants' aforementioned acts constitute trade dress infringement, false designation of origin, passing off and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), *et. seq*.

35. As a direct and proximate result of the foregoing acts of Defendants, K&M has been damaged and has suffered and will continue to suffer immediate and irreparable harm. Unless restrained by the Court, Defendants will continue to cause irreparable injury and damage to K&M and to the goodwill associated with K&M's trade dress. Plaintiff is without an adequate remedy at law.

## Third Cause of Action

## COPYRIGHT INFRINGEMENT

36. K&M repeats and re-alleges each and every allegation of paragraphs 1 through 35 as though fully set forth herein.

37. At all times herein, K&M has been and is still the owner and proprietor of all right, title and interest in and to the works depicted in the copyright registrations in attached Exhibit Binder at Tab D. These works were original works of authorship and constitute copyrightable subject matter under the copyright laws of the United States.

38. By its actions alleged above and with full knowledge of K&M's rights herein, Defendants have willfully infringed and will continue to infringe K&M's original copyrighted toy designs by copying K&M's popular toy products and offering the infringing products for sale in the United States, without K&M's permission.

39. Defendants' acts as aforesaid violate K&M's exclusive rights under the Copyright Act of 1976 and constitute infringement of its copyrights. As a result, K&M is entitled to an injunction restraining, its agents, employees and affiliated entities, from engaging in any further acts in violation of the Copyright Act, and damages in an amount to be established according to proof at trial.

Fourth Cause of Action

COMMON LAW UNFAIR COMPETITION

40. K&M repeats and re-alleges each and every allegation of paragraphs 1 through 39 as though fully set forth herein.

41. Defendants' aforementioned acts constitute unfair competition under the common law.

42. K&M has been damaged by Defendants' aforementioned acts.

Fifth Cause of Action

TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

43. K&M repeats and re-alleges each and every allegation of paragraphs 1 through 42 as though fully set forth herein.

44. Andrew Alberto entered into the Non-Competition Agreement with K&M on or about January 1, 2004. (A copy of the agreement is included in Exhibit Binder attached hereto at Tab G).

45. Mr. Alberto entered into the Employee Confidentiality Agreement with K&M on or about April 5, 2004. (A copy of the agreement is included in Exhibit Binder attached hereto at Tab H).

46. Mr. Alberto's employment with K&M terminated on or about September 30, 2005,

when he offered his resignation.

47. By October 2005, Mr. Alberto was hired by Wild Adventures, Inc., a division/subsidiary of Rhode Island Novelty, as its sales manager.

48. Prior to hiring Mr. Alberto as its sales manager, Robert Nowak, RINCO's President, met with Mr. Alberto, on more than one occasion, to discuss Mr. Alberto's work history with K&M, his experience in the plush and PVC toy industry, and his qualifications to assist Wild Adventures with its development of a new, sophisticated line of plush and PVC toys.

49. Prior to soliciting and hiring Mr. Alberto to work in competition with K&M, the Defendants knew about the contractual relationship between Mr. Alberto and K&M, including but not limited to the Non-Competition Agreement and the Employee Confidentiality Agreement, the restrictive covenants contained therein, and all terms and conditions related thereto.

50. The Defendants have an obligation under Ohio law to refrain from engaging in unfair competition and to avoid interfering with non-competition and confidentiality agreements such as the restrictive covenants in this case.

51. The Defendants intentionally, improperly, and without privilege or justification, interfered with the contractual relationship between Mr. Alberto and K&M.

52. The Defendants intentionally, improperly, and without privilege or justification procured Mr. Alberto's breach of the Non-Competition Agreement and the Employee Confidentiality Agreement by hiring Mr. Alberto and inducing him to solicit customers of K&M and to misuse K&M's confidential information, all in breach of the restrictive covenants contained in the Non-Competition Agreement and the Employee Confidentiality Agreement.

53. The Defendants intentionally, improperly, and without privilege or justification

procured Mr. Alberto's breach of the Non-Competition Agreement and the Employee Confidentiality Agreement with the motivation to pillage K&M's confidential information and trade secrets in order to gain an unfair advantage over K&M in the marketplace – by using K&M's confidential information and trade secrets to develop a new, sophisticated line of plush and PVC toys that compete with K&M's plush and PVC toys.

54. As a consequence of the Defendants' actual malice by knowingly and intentionally interfering with the contractual relationship between Mr. Alberto and K&M, Mr. Alberto, as an employee of Wild Adventures, solicited business and consummated sales of competing products to several customers of K&M.

55. As an actual, direct, and proximate result of the Defendants' tortious interference with the contractual relationship between Mr. Alberto and K&M, K&M has been harmed by the loss of numerous key customers, and the significant diminution of the value of its business and lost profits, the total damage of which may be difficult to fully ascertain and quantify at this time.

56. As a consequence of the Defendants' actual malice by knowingly and intentionally: (a) interfering with the contractual relationship between Mr. Alberto and K&M; (b) circumventing the express terms of the restrictive covenants contained in the Non-Competition Agreement and the Confidentiality Agreement; and (c) inducing Mr. Alberto to breach those restrictive covenants, K&M is entitled to punitive damages and attorneys' fees from the Defendants.

## Sixth Cause of Action

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

57. K&M repeats and re-alleges each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

58. K&M has business relationships with its customers.

59. The Defendants knew of the business relationships between K&M and its customers.

60. The Defendants intentionally, improperly, and without privilege or justification, interfered with the business relationships between K&M and its customers.

61. As an actual, direct, and proximate result of the Defendants' tortious interference with K&M's business relationships and opportunities, various customers of K&M have discontinued doing business with K&M and/or have reduced the amount of business they conduct with K&M, causing damage to K&M.

62. If allowed to continue unrestrained, K&M reasonably believes that the Defendants will continue to interfere tortiously and intentionally with its business relationships with its customers, causing K&M to suffer further irreparable harm.

63. The Defendants have acted maliciously and with ill will against K&M. By doing so, the Defendants have acted with a conscious disregard for the rights of K&M and with a great probability of causing it substantial harm.

64. As a consequence of the Defendants' actual malice by knowingly and intentionally interfering with the business relationships between K&M and its customers, K&M is entitled to punitive damages and attorneys' fees from the Defendants.

Seventh Cause of Action

UNJUST ENRICHMENT

65. K&M repeats and re-alleges each and every allegation of paragraphs 1 through 64 as though fully set forth herein.

66. The Defendants have been unjustly enriched at the expense of K&M by virtue of Mr. Alberto's breaches of the restrictive covenants contained in the Non-Competition Agreement and the Confidentiality Agreement and his duties owed to K&M.

67. The Defendants have benefited from Wild Adventures' employment of Mr. Alberto and Mr. Alberto's breaches of the restrictive covenants contained in the Non-Competition Agreement and the Confidentiality Agreement and his duties owed to K&M.

68. The Defendants have benefited from customers who terminated and/or reduced their business with K&M as a direct and proximate result of Mr. Alberto's solicitation of them, in violation of the restrictive covenants contained in the Non-Competition Agreement and the Confidentiality Agreement and the duties Mr. Alberto owed to K&M.

69. The Defendants have knowledge of the benefits they have received.

70. It would be inequitable for the Defendants to retain the benefits that they have received at the expense of K&M, and K&M asks the Court to order an equitable remedy or award damages to remedy the Defendants' unjust enrichment.

PRAYER FOR RELIEF

WHEREFORE, K&M prays that the Court enter judgment and relief against Defendants as follows:

A. A determination that Defendants and those acting in privity with them have directly infringed, contributorily infringed and/or actively induced infringement of:

(i) K&M's rights in the federally registered trademark WILD REPUBLIC and other trademarks;

(ii) K&M's rights in the distinctive trade dress associated with its toy products; and,

(iii) K&M's copyright rights in its original works of authorship.

B. Granting a preliminary and permanent injunction restraining Defendants, their officers, directors, principals, agents, servants, employees, successors and assigns, and all individuals acting in concert or participation with them, from:

i) registering or maintaining any federal or state trademark registration, or using in commerce, any names, words, designations or symbols confusingly similar to the trademark WILD REPUBLIC or any of the WILD REPUBLIC family of marks, the CUDDLEKINS trademark and/or any other unregistered mark owned by K&M, and the distinctive configuration and packaging trade dress associated with K&M's toy products;

ii) directly or indirectly infringing K&M's copyrights including, but not limited to, continuing to manufacture, distribute, market, advertise, promote, solicit or accept orders for, sell or offer for sale Defendants' infringing toy products or any works derived or copied from K&M's copyrighted works;

iii) engaging in false designation of origin, false description, false advertising or false representations or otherwise engaging in unfair competition, unfair business or deceptive trade practices or competing unfairly with K&M;

iv) engaging in any other conduct that is likely to cause confusion or to cause mistake or to deceive as to the source, affiliation, connection, or association of

Defendants' products with K&M; and,

v) engaging in any further actions of tortious interference of contract or business relations with K&M's customers.

C. Directing Defendants to use their best efforts to recall from the trade, including any and all distributors, wholesalers, dealers, retailers and all other third parties, any and all infringing products bearing the WILD REPUBLIC trademark and/or any and all products bearing any other mark that is confusingly similar to the WILD REPUBLIC trademark and/or any products that infringe K&M's distinctive trade dress and/or any products that infringe K&M's copyrights, along with all marketing, advertising, promotional and sales materials used in connection with the WILD REPUBLIC products and/or in the performance of Defendants' business.

D. Directing Defendants to file with the Court and serve on counsel for K&M, within thirty days after entry of any injunction issued by the Court in this action, a sworn statement as provided in 15 U.S.C. § 1116 setting forth in detail the manner and form in which the Defendants have complied with the injunction.

E. Directing Defendants to account for all gains, profits and advantages derived from the acts of infringement, false designation, passing off and unfair competition and for their other violations of law.

F. Directing that Defendants, jointly and severally, be ordered to pay for K&M's actual damages according to proof, and/or all profits realized by Defendants by reason of the unlawful acts by Defendants as set forth in this Complaint according to proof, pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 504.

G. Directing that Defendants, jointly and severally, be ordered to pay statutory damages based upon the acts of infringement pursuant to 17 U.S.C. § 504(c).

H. Directing that Defendants, jointly and severally, be ordered to pay treble damages to K&M on account of the defendant's willful, intentional and bad faith conduct pursuant to 15 U.S.C. § 1117.

I. Directing that Defendants, jointly and severally, be ordered to pay to K&M compensatory damages in an amount as may be proven at trial as a result of Defendants' acts of unfair competition, unjust enrichment and tortious interference with contract and business relations.

J. Directing that Defendants, jointly and severally, be ordered to pay to K&M punitive and exemplary damages as provided by law.

K. Directing that Defendants, jointly and severally, be ordered to pay to K&M its reasonable attorneys' fees, costs and disbursements incurred herein in view of Defendants' intentional and willful infringement, pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 505.

L. Awarding K&M pre-judgment and post-judgment interest to the maximum extent provided by law.

M. Awarding K&M such other and further relief as the Court may deem just and proper.

K & M INTERNATIONAL, INC

By its Attorneys,

Bruce W. Gladstone (R.I. Bar No.:2643)
CAMERON & MITLEMAN LLP
56 Exchange Terrace
Providence, RI 02903
(401) 331-5700 (Telephone)
(401) 331-5787 (Fax)

*Of Counsel*:

Steven E. Seasly
HAHN, LOESER & PARKS
3300 BP Tower
200 Public Square
Cleveland, OH 44114
(216) 621-0150 (Telephone)
(216) 241-2824 (Fax)

Edmund J. Ferdinand, III
GRIMES & BATTERSBY, LLP
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(203) 849-8300 (Telephone)
(203) 849-9300 (Fax)

**JURY DEMAND**

Plaintiff demands a trial by jury of all counts so triable.

Bruce W. Gladstone (R.I. Bar No.: 2643)

Dated: April 3, 2006