UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| K&M INTERNATIONAL, INC., Plaintiff and Defendant-in-Counterclaim, | ) | C.A. No: 06-159-ML-DLM |
| v. | ) | |
| RHODE ISLAND NOVELTY, INC. and WILD ADVENTURES, INC., Defendants and Plaintiff-in-Counterclaim. | ) | DEFENDANTS' MOTION FOR TEMPORARY RESTRAINING ORDER, AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE AGAINST PLAINTIFF, AND FOR AN ORDER FOR EXPEDITED DISCOVERY |

Defendant and plaintiff-in-counterclaim, Rhode Island Novelty, Inc. ("RINCO"), in its own name and through its d/b/a, "Wild Adventures",[1] hereby moves for a Temporary Restraining Order, an Order to Show Cause Why a Preliminary Injunction Should Not Issue Against Plaintiff and for an Order for Expedited Discovery, pursuant to Federal Rules of Civil Procedure 65, 34(b) and 30(b), against the plaintiff and defendant-in-counterclaim K&M International, Inc. ("K&M") for the reason that K&M has made and is making false representations, statements and assertions regarding RINCO's business practices related to the sale and distribution of plush toys and related products under the name "Wild Adventures." In support of this motion, RINCO relies on the accompanying Memorandum of Law In Support Of Motion For Temporary Restraining Order, An Order To Show Cause Why A Preliminary Injunction Should Not Issue Against Plaintiff, And For An Order For Expedited Discovery, the Affidavit of Andy Alberto In Support Of Motion For Temporary Restraining Order, An Order To Show Cause Why A Preliminary Injunction Should Not Issue Against Plaintiff And For An Order For Expedited Discovery, and the exhibits thereto, and states the following:

[1] Plaintiff has named as a defendant, "Wild Adventures, Inc." To the best of RINCO's knowledge, no such entity exists.

1. RINCO is likely to succeed in showing that K&M has made and is continuing to make false representations, statements and assertions regarding RINCO's business practices related to the sale and distribution of plush toys and related products under the name "Wild Adventures";

2. Such representations, statements and assertions will result in immediate and irreparable injury to RINCO if K&M is not restrained and enjoined;

3. RINCO's harm from denial of the requested temporary restraining order would outweigh the harm to K&M's legitimate business interests from granting such an order;

4. RINCO has demonstrated entitlement to expedited discovery; and

5. There is no public interest in jeopardy in this case

WHEREFORE, RINCO respectfully moves that the Court enter the [Proposed] Order to Show Cause With Temporary Restraints And Granting Expedited Discovery, attached hereto as Exhibit A.

Respectfully submitted,
RINCO,
By its attorneys:

William A. Poore, Esq. (#1436)
Christopher J. O'Connor, Esq. (#5078)
POORE & ROSENBAUM LLP
30 Exchange Place
Providence, RI 02903
Tel: (401) 831-2600
Fax: (401) 831-2220

*and*

Joseph P. Davis III (BBO#551111)
James P. Ponsetto (BBO# 556144)
GREENBERG TRAURIG, LLP[2]
One International Place
Boston, Massachusetts 02110
Tel: (617) 310-6000
Fax: (617) 310-6001

**CERTIFICATE OF SERVICE**

I hereby certify that the Defendants' Motion For Temporary Restraining Order, An Order To Show Cause Why A Preliminary Injunction Should Not Issue Against Plaintiff, And For An Order For Expedited Discovery, Defendants' Memorandum of Law in Support thereof, and all supporting papers, were served on counsel for the Plaintiffs in this action, by hand delivery and facsimile on April 28, 2006.

Bruce W. Gladstone, Esq.
CAMERON & MITLEMAN LLP
56 Exchange Terrace
Providence, RI 02903

Edmund J. Ferdinand, III, Esq.
GRIMES & BATTERSBY, LLP
488 Main Avenue, 3rd Fl.
Norwalk, Connecticut 06851-1008

Steven E. Seasly, Esq.
HAHN, LOESER & PARKS
3300 BP Tower
200 Public Square
Cleveland, Ohio 44114

Christopher J. O'Connor, Esq.

[2] A motion to admit Messrs. Davis and Ponsetto *pro hac vice* is pending.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **K&M INTERNATIONAL, INC.,**<br><br>**Plaintiff and**<br>**Defendant-in-Counterclaim,**<br>**v.**<br><br>**RHODE ISLAND NOVELTY, INC. and WILD ADVENTURES, INC.,**<br><br>**Defendants and**<br>**Plaintiff-in-Counterclaim.** | **C.A. No: 06-159-ML-DLM**<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER, AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE AGAINST PLAINTIFF, AND FOR AN ORDER FOR EXPEDITED DISCOVERY** |

Defendant and plaintiff-in-counterclaim, Rhode Island Novelty, Inc. ("RINCO"), in its own name and through its d/b/a, "Wild Adventures",[1] hereby moves for a Temporary Restraining Order, an Order to Show Cause Why a Preliminary Injunction Should Not Issue Against Defendant and for an Order for Expedited Discovery, pursuant to Federal Rules of Civil Procedure 65, 34(b) and 30(b), against the plaintiff and defendant-in-counterclaim K&M International, Inc. ("K&M") for the reason that K&M has made and is making false representations, statements and assertions regarding RINCO's business practices related to the sale and distribution of plush toys and related products under the name "Wild Adventures."

RINCO is in need of relief on an emergency basis because: (1) K&M, since the commencement of this action three weeks ago, has a engaged in an aggressive campaign, by way of publishing defamatory comments, to prevent RINCO from coming to market by intimidating and misleading buyers into believing that RINCO utilizes "unscrupulous business practices," which it does not; (2) a major trade show in the industry is taking place on Monday, May 1 and Tuesday, May 2, during which K&M has a booth and through which RINCO believes, based on

[1] Plaintiff has named as a defendant, "Wild Adventures, Inc." To the best of RINCO's knowledge, no such entity exists.

K&M's outrageous conduct of late, it will continue its unlawful smear campaign against RINCO, thereby causing RINCO irreparable harm to its goodwill and reputation; and (3) K&M's recent sales tactics, by which, among other things, it has mailed a defamatory letter to, on information and belief, all or nearly all of RINCO's prospective and existing customers, has had the desired effect or providing K&M with injunctive relief against RINCO without ever having provided RINCO with due process or having obtained a Court order.

**PRELIMINARY STATEMENT**

RINCO, a successful distributor of novelties and toys, recently launched a product line of wildlife-related stuffed animals and other similar toys for distribution in the zoo, museum and aquarium market ("ZMA market") under the trademark, "Wild Adventures" (registration pending). K&M is believed to be the dominant distributor of nature toys in the ZMA market. Unable to compete with RINCO on price, K&M has resorted to the initiation of baseless litigation and engaging in a deliberate and concerted effort to keep RINCO from entering the ZMA market by, among other actionable conduct, defaming RINCO, confusing prospective customers and bullying existing customers into not buying product from RINCO. Indeed, in lieu of seeking formal injunctive relief before this court, K&M took it upon itself to issue a form letter -- believed to have been disseminated to each of the customers comprising the ZMA market -- which has had the same practical effect as an injunction issued by the court. RINCO has filed a counterclaim complaint seeking damages and injunctive relief for defamation, abuse of process, unfair competition, tortious interference with contractual relations, tortious interference with advantageous relations, injury to business reputation in violation of R.I. Gen. Laws §6-2-12, and violation of the Lanham Act. However, RINCO now seeks a TRO to enjoin

K&M from engaging in further unfair competition and to preserve the status quo between the parties pending a full and fair litigation of this action.

## FACTUAL BACKGROUND

### A. K&M And The ZMA Market.

1. K&M distributes and markets a line of nature toys under the name "Wild Republic." Affidavit of Andy Alberto in Support of Rhode Island Novelty's Motion For Temporary Restraining Order, An Order To Show Cause Why A Preliminary Injunction Should Not Issue Against Plaintiff And For An Order For Expedited Discovery (hereinafter, the "Alberto Aff.") at ¶ 3. K&M is the dominant supplier of toys and related items in the so-called ZMA market which is an acronym for zoos, museums and aquariums. *Id.* at ¶ 3. The ZMA market is a long-established market for educational items which include, but are not limited to, plush toys (stuffed animals and toys), such as snakes and long-arm monkeys; nature tubes (plastic tubes containing animal and other toy figures); pinchers (toys with movable animal heads on a cylindrical tube); paint and play sets; and related products. *Id.* at ¶ 4. There are over four-hundred zoos, museums and aquarium shops in the ZMA market, plus countless toy stores and other retailers that sell goods typically sold to zoos, museums and aquariums. *Id.* at ¶ 20.

### B. Mr. Alberto's Employment With K&M.

Mr. Alberto is a former employee of K&M, located in Twinsburg, Ohio. *Id.* at ¶ 2. Mr. Alberto worked for K&M as an account executive between 1998 and 2005 and focused his sales effort in the ZMA market. *Id.* at ¶ 5. Mr. Alberto voluntarily resigned his position at K&M on September 16, 2005. *Id.* at ¶ 6.

**C. Mr. Alberto's Initial Employment With RINCO.**

On or about October 4, 2005, Mr. Alberto commenced his employment with RINCO as a Sales Manager. *Id.* at ¶ 7.

**D. RINCO's Establishment Of The "Wild Adventures" Product Line.**

Prior to Mr. Alberto's joining RINCO, RINCO established the "Wild Adventures" product line. *Id.* at ¶ 8. RINCO used "Wild Adventures" as a trade name to market and promote its distinct line of wildlife-related products to the ZMA and other markets. *Id.* at ¶ 8. RINCO's "Wild Adventures" product line includes plush toys, such as snakes and long-arm monkeys, nature tubes, figurines, pinchers, pens, key chains, balls, puzzles, action toys, paint kits and play sets. *Id.* at ¶ 8. Although RINCO sold to the ZMA market long before establishing the "Wild Adventures" trade name and product line, the ZMA market historically accounted for only a small amount of RINCO's sales. *Id.* at ¶ 9. Mr. Alberto had no involvement in establishing the "Wild Adventures" name or related product line. *Id.* at ¶ 10. Mr. Alberto was hired only in a sales capacity by RINCO. *Id.* at ¶ 11.

**E. K&M's Lawsuit Against Mr. Alberto.**

On November 15, 2005, K&M filed a lawsuit against Mr. Alberto in the Court of Common Pleas, Summit County, Ohio, CA No. 2005-11-6769 (the "Ohio Action") alleging that he violated a non-competition agreement and a confidentiality agreement he had with K&M in connection with his employment by RINCO. *Id.* at ¶ 12. RINCO was not named as a defendant in the Ohio Action. *Id.* at ¶ 12. Mr. Alberto defended the Ohio Action. *Id.* at ¶ 12.

On or about December 15, 2005, Mr. Alberto ceased his employment with RINCO. *Id.* at ¶ 13.

K&M and Mr. Alberto agreed to a judgment in the Ohio Action on or about January 5, 2006. *Id.* at ¶ 14. Neither party admitted facts alleged by the other in connection with the agreement for judgment. *Id.* at ¶ 14. Pursuant to the agreement for judgment in the Ohio Action, Mr. Alberto was permitted to return to work for RINCO as an employee as of April 15, 2006. *Id.* at ¶ 14.

**F. Mr. Alberto's Current Employment With RINCO.**

Mr. Alberto returned to work as a Sales Manager for RINCO on April 17, 2006. *Id.* at ¶ 15. Mr. Alberto did not work for RINCO between December 15, 2005 through April 17, 2006. *Id.* at ¶ 15. Mr. Alberto did not impart any confidential information to RINCO regarding K&M. *Id.* at ¶ 16. Since April 17, 2006, Mr. Alberto has been involved in daily sales activity for RINCO targeted at the ZMA market. *Id.* at ¶ 17. Mr. Alberto has obtained the names and numbers of prospective customers through the Internet and other publicly available sources. *Id.* at ¶ 17. These sources are completely independent of K&M. *Id.* at ¶ 17. Mr. Alberto supervises two RINCO sales associates. *Id.* at ¶ 18.

**G. The ZMA Market's Critical Sales Period.**

Based on Mr. Alberto's years of experience, it is well established that over half of a distributor's annual sales in the ZMA market are generated during the period between March and June (the "Main Sales Period"). *Id.* at ¶ 19. Thus, the vast majority of customers place orders in the Main Sales Period for the current year. *Id.* at ¶ 19. This is the critical sales period because of the overall seasonal nature of the business within this market. *Id.* at ¶ 19.

**H. K&M's Unlawful Campaign To Prevent RINCO From Doing Business.**

Shortly after Mr. Alberto commenced his sales efforts for RINCO, he learned about this lawsuit, which had been filed by K&M in Rhode Island. *Id.* at ¶ 21. The lawsuit claims that

RINCO allegedly violated K&M's trademark and copyrights among other allegations (the "Lawsuit"). *Id.* at ¶ 21.

On or about April 18, 2006, Mr. Alberto learned from a prospective customer, Steve Fairchild at the Sedgwick County Zoo in Kansas, that K&M had sent a letter to him describing the Lawsuit and alleging generally that RINCO was engaged in improper business practices (the "K&M Letter"). *Id.* at ¶ 22.

This was the first of numerous sales calls since April 17, 2006 where customers and prospective customers of RINCO in the ZMA Market mentioned to Mr. Alberto that they had received the same letter from K&M within the last few weeks. *Id.* at ¶ 23.

Since April 17, Mr. Alberto has communicated with eight customers in the ZMA market, *each* of which disclosed that they received a copy of the K&M Letter. *Id.* at ¶ 24. In no case did Mr. Alberto ask any of them if they had received the K&M Letter. *Id.* at ¶ 24. Rather, each of them told Mr. Alberto about the K&M Letter unsolicited. *Id.* at ¶ 24.

The K&M Letter is causing RINCO to lose business and new business opportunities. *Id.* at ¶ 25. For example, The zoo souvenir shop at the Beardsley Zoo, in Bridgeport, Connecticut, which had previously placed sales orders with RINCO to purchase products in its "Wild Adventures" line before Mr. Alberto commenced his employment in April, cancelled orders representing approximately $4,000 in business just after Rose Ryan, a purchasing agent for the Beardsley Zoo, disclosed to Mr. Alberto on or about April 19, 2006, that she received the K&M Letter. *Id.* ¶ 26. Ms. Ryan told Mr. Alberto, in substance, that she did not want to be involved in any litigation related to the sale of RINCO's products. *Id.* at ¶ 26.

In addition, other customers who have received the K&M Letter have disclosed, in substance, that they are not prepared to place business with RINCO since they have received the

K&M Letter. *Id.* at ¶ 27. Notably, on April 27, 2006, Mr. Alberto was scheduled to meet with a buyer at the Southwick Zoo in Massachusetts. *Id.* at ¶ 27. Mr. Alberto called the buyer to confirm the sales appointment. *Id.* at ¶ 27. During that call, the buyer said in substance that she was not happy about the situation with K&M. *Id.* at ¶ 27. When Mr. Alberto asked what the buyer meant, she said, "you know what I'm talking about; you're using K&M's logo." *Id.* at ¶ 27. The buyer confirmed that she had received the K&M Letter. *Id.* at ¶ 27.

In another case, a buyer affiliated with the EcoTarium, a zoo, museum and nature center in Worcester, Massachusetts, told Mr. Alberto in connection with a sales call on April 21, 2006, that that she received the K&M Letter and had to think about whether, under the circumstances, it was appropriate to buy products from RINCO. *Id.* at ¶ 28.

Significantly, Mr. Alberto has not met or talked to a prospective customer in the ZMA market since he started with RINCO on April 17, 2006, who has not mentioned that they received the K&M Letter and were concerned about the allegations therein. *Id.* at ¶ 29. Buyers from the Milwaukee County Zoo, the Zooquarium in West Yarmouth, Massachusetts, the Niabi Zoo in Molene, Illinois, the Baltimore Zoo in Baltimore, Maryland, and the Great Plains Zoo in South Dakota, in addition to the buyers listed above, all disclosed to Mr. Alberto that they had received the K&M Letter within the past few weeks. *Id.* at ¶ 29.

A buyer at the Niabi Zoo finally sent Mr. Alberto a copy of the K&M Letter on April 25, 2006. *Id.* at ¶ 30 & Ex. A. This was the first time Mr. Alberto had seen the letter. *Id.* at ¶ 30.

Mr. Alberto's sales efforts on behalf of RINCO in the ZMA market are being significantly and negatively impacted by the K&M Letter and the false light in which it places RINCO and "Wild Adventures." *Id.* at ¶ 31. RINCO is not contacting customers "in an effort to sell toys that infringe on K&M's copyright and trademark rights," as the letter says. *Id.* at ¶ 31.

RINCO has done nothing to confuse the buying public, as K&M suggests. *Id.* at ¶ 31. "Wild Adventures" is distinct from "Wild Republic." *Id.* at ¶ 31. RINCO's products are staples in the market, are distinctive, and are not copies or "knockoffs" of K&M's products. *Id.* at ¶ 31. RINCO is simply a legitimate competitor of K&M. *Id.* at ¶ 31.

Since RINCO, under the "Wild Adventures" brand and product line, is still new to the ZMA market, Mr. Alberto's sales efforts during the Main Sales Period are critical in furthering the growth of RINCO's reputation and goodwill in the ZMA market. *Id.* at ¶ 32. This period is also critical for Mr. Alberto to establish and reestablish good relationships with buyers in this market as a new representative of RINCO. *Id.* at ¶ 32.

RINCO's efforts to establish a solid customer base and goodwill with the "Wild Adventures" product line in the ZMA market is being unfairly impeded by the K&M Letter and the false statements contained therein. *Id.* at ¶ 33.

**I. The May 1-2, 2006 Museum Store Association Trade Show.**

On May 1-2, 2006, the Museum Store Association ("MSA") Trade Show is being held in Milwaukee, Wisconsin. *Id.* at ¶ 34. Mr. Alberto has attended four or five MSA Trade Shows in the past. *Id.* at ¶ 34. This annual trade show brings together hundreds of customers and buyers in the ZMA market. *Id.* at ¶ 34. According to K&M's website (www. KMtoys.com), K&M will be occupying booth number 437 at the MSA Trade Show. *Id.* at ¶ 34 & Ex. B.

Given K&M's behavior of late, including the mailing of the K&M letter to customers, RINCO believes that K&M's representatives will continue to publicize the Lawsuit and make false allegations about RINCO and its business practices at the MSA Trade Show. If it does so, such statements will further erode RINCO's business reputation, goodwill and ability to generate new business and keep any existing business in the ZMA market. *Id.* at ¶ 35.

## ARGUMENT

### A. Standard for Issuance of Temporary Restraining Order.

In accordance with the familiar standards for obtaining a temporary restraining order, a court must consider: (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no order issues; and (4) preservation of the status quo. *Starlight Sugar, Inc. v. Soto*, 114 F.3d 330, 331 (1st Cir. 1997); *Silva v. East Providence Housing Authority*, 390 F. Supp. 691, 695 (D.R.I. 1975). RINCO satisfies this standard and is entitled to a TRO against K&M.

### B. RINCO is Likely to Succeed on the Merits.

Significantly, with respect to this factor, this court has held "that the likelihood of success on the merits should be a minor factor, especially where the potential injury is great." *Silva*, 390 F. Supp. at 696. Thus, "if the balance of hardships tips decidedly toward the [movant], it is ordinarily sufficient that the [movant] has raised questions going to the merits which are so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus, for more deliberate investigation." *Silva*, 390 F. Supp. at 696 (citation and quotation marks omitted). RINCO has satisfied this test.

#### 1. RINCO's Is Likely To Succeed On The Merits of Its Defamation Claim.

To succeed on a claim of defamation, a party must establish four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) damages. *Nelson v. City of Cranston*, 116 F. Supp. 2d 260, 267 (D.R.I. 2000); *Alves v. Hometown Newspapers,*

*Inc.*, 857 A.2d 743, 751 (R.I. 2004). RINCO can adduce evidence to establish each of these elements.

RINCO has learned from prospective customers that the K&M Letter was sent to them describing the Lawsuit and alleging generally that RINCO was engaged in improper business practices. Alberto Aff. at ¶ 22. Since April 17, Mr. Alberto has communicated with eight customers in the ZMA market, *each* of which disclosed that they received a copy of the K&M Letter. *Id.* at ¶ 24. In no case did Mr. Alberto ask them if they had received the K&M Letter. *Id.* at ¶ 24. In each case, they told Mr. Alberto about the K&M Letter unsolicited. *Id.* at ¶ 24.

The K&M Letter contains a number of false and defamatory statements. RINCO is not contacting customers "in an effort to sell toys that infringe on K&M's copyright and trademark rights," as the letter says. *Id.* at ¶ 31. RINCO has done nothing to confuse the buying public, as K&M suggests. *Id.* at ¶ 31. "Wild Adventures" is distinct from "Wild Republic." *Id.* at ¶ 31. RINCO's products are staples in the market, are distinctive, and are not copies or "knockoffs" of K&M's products. *Id.* at ¶ 31. RINCO is simply a legitimate competitor of K&M. *Id.* at ¶ 31. The dissemination of the K&M Letter was, at best, negligence; at worst, it is a concerted effort to crush the growing business of a legitimate (and more cost-effective) competitor. Nor is the K&M Letter protected by any privilege as a description of an official proceeding. *See Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 731-732 (7th Cir. 2004) (affirming determination that privilege was inapplicable to party because "[a] person cannot confer this privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated") (quoting Restatement (Second) of Torts, § 611, comment c (1977)).

The K&M Letter is causing RINCO to lose business and new business opportunities. Alberto Aff. at ¶ 25. For example, the zoo souvenir shop at the Beardsley Zoo, located in Bridgeport, Connecticut, which had previously placed sales orders with RINCO to purchase products in its "Wild Adventures" line before Mr. Alberto commenced his employment in April, cancelled orders representing approximately $4,000 in business just after Rose Ryan, a purchasing agent for the Beardsley Zoo, disclosed to Mr. Alberto on or about April 19, 2006, that she received the K&M Letter. *Id.* at ¶ 26. Ms. Ryan told Mr. Alberto, in substance, that she did not want to be involved in any litigation related to the sale of RINCO's products. *Id.* at ¶ 26. In addition, other customers who have received the K&M Letter have disclosed, in substance, that they are not prepared to place business with RINCO since they have received the K&M Letter. *Id.* at ¶ 27. Notably, on April 27, 2006, Mr. Alberto was scheduled to meet with a buyer at the Southwick Zoo in Massachusetts. *Id.* at ¶ 27. Mr. Alberto called the buyer to confirm the sales appointment. *Id.* at ¶ 27. During that call, the buyer said in substance that she was not happy about the situation with K&M. *Id.* at ¶ 27. When Mr. Alberto asked what the buyer meant, she said, "you know what I'm talking about; you're using K&M's logo." *Id.* at ¶ 27. In another case, a buyer affiliated with the EcoTarium, a zoo, museum and nature center in Worcester, Massachusetts, told Mr. Alberto in connection with a sales call on April 21, 2006, that she had received the K&M Letter and had to think about whether, under the circumstances, it was appropriate to buy products from RINCO. *Id.* at ¶ 28.

Significantly, Mr. Alberto has not met or talked to a prospective customer in the ZMA market since he started with RINCO on April 17, 2006, who has not mentioned that they received the K&M Letter and were concerned about the allegations therein. *Id.* at ¶ 29. Buyers from the Milwaukee County Zoo, the Zooquarium in West Yarmouth, Massachusetts, the Niabi

Zoo in Molene, Illinois, the Baltimore Zoo in Baltimore, Maryland, and the Great Plains Zoo in South Dakota, in addition to the buyers listed above, all disclosed to Mr. Alberto that they had received the K&M Letter within the past few weeks. *Id.* at ¶ 29.

RINCO's sales efforts in the ZMA market are being significantly and negatively impacted by the K&M Letter and the false light in which it places RINCO and "Wild Adventures." *Id.* at ¶ 31. Since RINCO, under the "Wild Adventures" brand and product line is still new to the ZMA market, its sales efforts during the Main Sales Period is critical to furthering the growth of RINCO's reputation and goodwill in the ZMA market. *Id.* at ¶ 32. This period is also critical for Mr. Alberto to establish and reestablish good relationships with buyers in this market as a new representative of RINCO. *Id.* at ¶ 32. RINCO's efforts to establish a solid customer base and goodwill with the "Wild Adventures" product line in the ZMA market is thus being unfairly impeded by the K&M Letter and the false statements contained therein. *Id.* at ¶ 33.

**2. RINCO Is Likely To Succeed On The Merits Of Its Tortious Interference With Advantageous Relationships Claim.**

To succeed on a claim of tortious interference with advantageous relationships, a party must establish five elements: (1) the existence of a business relationship or expectancy with a third party; (2) the defendant's knowledge of that relationship or expectancy; (3) an intentional act of interference by the defendant; (4) the causing of harm to the plaintiff by virtue of the interference; and (5) resulting damages. *Pride Hyundai, Inc. v. Chrysler Financial Co., LLC*, 263 F. Supp. 2d 374, 398 (D.R.I. 2003); *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of Rhode Island*, 239 F. Supp. 2d 180, 194 (D.R.I. 2003); *L.A. Ray Realty v. Town Council of the Town of Cumberland*, 698 A.2d 202, 207 (R.I. 1997).

The facts of this case are analogous to those in *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, C.A. No. 05-21113-CV-JORDAN (S.D. Fla.). In *Slip-N-Slide*, plaintiff Slip-N-Slide Records, Inc. ("S-N-S"), a record producer and distributor filed an action alleging, *inter alia*, a claim of tortious interference with advantageous business relationships against defendant TVT Records, LLC ("TVT"). *See* Report and Recommendation, *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, C.A. No. 05-21113-CV-JORDAN (S.D. Fla. dated Sept. 28, 2005) (Brown, M.J.), at 2 (attached hereto as Exhibit A).

In *Slip-N-Slide*, TVT disseminated Cease and Desist letters to numerous distributors which stated that a music album being advertised for release by S-N-S had been created and promoted without TVT's permission and in violation of TVT's rights. *Id.* at 9. The letter also stated that the sale or distribution of the album violated TVT's rights and constituted violation of the Lanham Act. *Id.*

S-N-S had received over 100,000 pre-orders for the album before the letters were received by the distributors. *Id.* at 10. However, S-N-S was unable to release the album when planned because virtually every distributor who received the letters refused to sell it. *Id.* at 10. S-N-S subsequently filed a motion for a preliminary injunction, requesting an order enjoining TVT from interfering with the release of the album. *Id.* at 16.

In recommending that S-N-S's motion for a preliminary injunction be granted, the Magistrate Judge stated that:

> TVT's statement that S-N-S's action in promoting and distributing [the album] were a violation of TVT's rights . . . was a misrepresentation which was made with knowledge (or was at least reckless), and which was clearly intended to cause the recipients of the letter to not purchase [the album].

*Id.* at 18. Thus, the Magistrate Judge determined "that TVT's interference with S-N-S's business relationships with its distributors was intentional and unjustified." *Id.* at 18.

For many of the same reasons outlined, above, RINCO can also succeed on its claim of tortious interference with advantageous relationships. In brief, RINCO has either a business relationship or expectancy with a number of customers in the ZMA market. Alberto Aff. at ¶¶ 22-24, 26-29. Indeed, at least one of those customers, Rose Ryan, a purchasing agent for the Beardsley Zoo, had already placed an order for approximately $4,000 in business. *Id.* at ¶ 26. K&M knew that RINCO had such relationships or expectancies, and intentionally disseminated the K&M letter. *Id.* at ¶ 30 & Ex. A. At least eight customers in the ZMA market (and potentially hundreds more) have received a copy of the K&M Letter. *Id.* at ¶ 24. The false and defamatory statements contained in the K&M Letter is causing RINCO to lose business and new business opportunities. *Id.* at ¶ 25. As noted above, Mr. Ryan cancelled orders representing approximately $4,000 in business just after she disclosed to Mr. Alberto that she received the K&M Letter. *Id.* at ¶ 26. Mr. Ryan told Mr. Alberto, in substance, that she did not want to be involved in any litigation related to the sale of RINCO's products. *Id.* at ¶ 26. In addition, other customers who have received the K&M Letter have disclosed, in substance, that they are not prepared to place business with RINCO since they have received the K&M Letter. *Id.* at ¶ 27. Further, Mr. Alberto's sales efforts on behalf of RINCO in the ZMA market are being significantly and negatively impacted by the K&M Letter and the false light in which it places RINCO and "Wild Adventures." *Id.* at ¶ 31. *See* Report and Recommendation, *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, C.A. No. 05-21113-CV-JORDAN (S.D. Fla. dated Sept. 28, 2005) (Brown, M.J.), at 18 (finding that movant had been damaged by letters disseminated by competitor where movant, despite having already received over 100,000 pre-orders for music album, was unable to release the album because virtually every distributor who received the letter was refused to sell it).

### C. RINCO Is Suffering Irreparable Harm As A Result Of K&M's Conduct.

#### 1. RINCO's Is Suffering Loss Of A Unique Or Fleeting Business Opportunity.

The First Circuit has recognized that "the loss of a unique or fleeting business opportunity can constitute irreparable injury." *Starlight Sugar, Inc. v. Soto*, 114 F.3d 330, 332 (1st Cir. 1997). In *Starlight Sugar*, the defendant, the Department of Agriculture of the Commonwealth of Puerto Rico (the "DOA"), urged the First Circuit to vacate a preliminary injunction that barred the DOA's enforcement of Section Six of its Market Regulation 13. *Starlight Sugar*, 114 F.3d at 331. Section Six prohibited the importation into Puerto Rico of refined sugar intended for consumer sale that was not prepackaged in units of five pounds or less. *Id.* The district court held that Section Six violated the Commerce Clause, the Equal Protection Clause, and that the plaintiff sugar importers had met each of the grounds for preliminary injunctive relief. *Id.*

In affirming the entry of preliminary relief, the First Circuit found that the plaintiffs had established irreparable harm. *Id.* at 332. Specifically, irreparable harm was threatened by the inability of the plaintiff sugar importers to take advantage of an impending shortage of sugar supplies in Puerto Rico. *Id.* The DOA argued that a potential harm cannot be deemed "irreparable" if it is of a kind that can be later compensated through money damages. *Id.* The First Circuit rejected this argument, holding that:

> While it is true that injunctive relief is generally inappropriate where money damages can make a plaintiff whole, we have recognized that *the loss of a unique or fleeting business opportunity can constitute irreparable injury. . . .* The concern in the present situation is clear: although we remain in the domain of economic profit or loss, a context in which compensation through legal remedies is preferred, *as a practical matter the potential value of an evanescent business opportunity may be extremely difficult to measure, after the fact.*

*Id.* (emphasis added and citations omitted); *see also Hyde Park Partners v. Connolly*, 839 F.2d 837, 853 (1st Cir. 1988) (finding irreparable harm and affirming entry of preliminary relief where timing, such as in the context of a tender offer, is critical).

As noted above, based on Mr. Alberto's experience, it is well established that over half of a distributor's annual sales in the ZMA market are generated during the Main Sales Period. Alberto Aff. at ¶ 19. Thus, the vast majority of customers place orders in the Main Sales Period for the current year. *Id.* at ¶ 19. This is the critical sales period because of the overall seasonal nature of the business within this market. *Id.* at ¶ 19. The K&M Letter was received by a number of RINCO's customers and prospective customers, and is continuing to harm RINCO's sales efforts during the Main Sales Period, resulting in "the loss of a unique or fleeting business opportunity" and, thus, irreparable harm. *Id.* at ¶ 26. Indeed, Buyers from the Milwaukee County Zoo, the Zooquarium in West Yarmouth, Massachusetts, and the Niabi Zoo in Molene, Illinois, the Baltimore Zoo in Baltimore, Maryland, and the Great Plains Zoo in South Dakota, in addition to other buyers, all disclosed that they received the K&M Letter within the past few weeks. *Id.* at ¶ 29. As a result, Mr. Alberto's sales efforts on behalf of RINCO in the ZMA market are being significantly and negatively impacted by the K&M Letter and the false light in which it places RINCO and "Wild Adventures." *Id.* at ¶ 31.

**2. RINCO Is Suffering Harm To Its Business Reputation And Loss Of Customer Goodwill.**

In addition, K&M's dissemination of the defamatory letter is harming RINCO's business reputation and is causing the loss of customer goodwill. Indeed, "[b]y its very nature injury to goodwill and reputation is not easily measured or fully compensable in damages" and, ""[a]ccordingly, this kind of harm is often held to be irreparable." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 20 (1st Cir. 1996); *see also Coastal Distribution, LLC v. Town of*

*Babylon*, C.A. No. 05-CV-2032, 2006 WL 270252, at *3 (E.D.N.Y. Jan. 31, 2006) ("Loss of goodwill and injury to reputation are injuries that are difficult to measure in dollars, and thus, these types of injuries are irreparable harm" and "[f]urthermore, loss of business opportunities and relationships with clients who could produce an indeterminate amount of business over years to come are also hard to measure in dollars and are properly considered irreparable harm") (citations and quotation marks omitted).

This type of harm is particularly evident where a competitor disseminates defamatory information to business partners and customers. *See, e.g, Xelus, Inc. v. Servigistics, Inc.*, 371 F. Supp. 2d 387, 390 (W.D.N.Y. 2005) (issuing temporary restraining order and finding irreparable harm where competitor's "alleged disparaging comments" could cause "damage to movant's business reputation and loss of customer goodwill).

Also, since RINCO, under the "Wild Adventures" brand and product line is still new to the ZMA market, Mr. Alberto's sales efforts during the Main Sales Period, are critical to furthering the growth of RINCO's reputation and goodwill in the ZMA market. Alberto Aff. at ¶ 32. This period is also critical for Mr. Alberto to establish and reestablish good relationships with buyers in this market as a new representative of RINCO. *Id.* at ¶ 32. RINCO's efforts to establish a solid customer base and goodwill with the "Wild Adventures" product line in the ZMA market is thus being unfairly impeded by the K&M Letter and the false statements contained therein. *Id.* at ¶ 33.

### D. The Balance Of Hardships Favors RINCO And Return Of The Parties To The Status Quo Prior To The Dissemination Of The K&M Letter.

RINCO seeks no more than a return to the status quo that existed prior to the dissemination of the K&M Letter. RINCO is thus requesting that that K&M be restrained from disseminating any defamatory statements and that it be afforded the opportunity to compete in

the ZMA Market on a level-playing field. This relief is particularly important because, on May 1-2, 2006, the MSA Trade Show is being held in Milwaukee, Wisconsin. Alberto Aff. at ¶ 34. This annual trade show brings together hundreds of customers and buyers in the ZMA market. *Id.* at ¶ 34. According to K&M's website (www. KMtoys.com), K&M will be occupying booth number 437 at the MSA Trade Show. *Id.* at ¶ 34 & Ex. B. RINCO will face significant hardship if K&M is permitted to continue disseminating the information contained in the K&M Letter. Indeed, given K&M's behavior of late, including the mailing of the K&M letter to customers, RINCO is concerned that K&M's representatives will continue to publicize the Lawsuit and make false allegations about RINCO, and its business practices at the MSA Trade Show. *Id.* at ¶ 35. If it does so, such statements will further erode RINCO's business reputation, goodwill and ability to generate new business and keep any existing business in the ZMA market. *Id.* at ¶ 35.

Thus, on balance, the hardships presently being suffered by RINCO, including the loss of a unique or fleeting business opportunity, the continuing harm to its business reputation, and the loss of customer goodwill, outweighs any alleged hardship to K&M. *See Silva*, 390 F. Supp. at 695 (holding that balance of hardships weighed in favor of movant where it sought "no more than to preserve the status quo").

## CONCLUSION

In conclusion, RINCO respectfully requests that the Court enter the [Proposed] Order to Show Cause With Temporary Restraints and Granting Expedited Discovery.

Dated: April 28, 2006

Respectfully submitted,
RINCO,
By its attorneys:

William A. Poore, Esq. (#1436)
Christopher J. O'Connor, Esq.
POORE & ROSENBAUM LLP
30 Exchange Place
Providence, RI 02903
Tel: (401) 831-2600
Fax: (401) 831-2220

*and*

Joseph P. Davis III (BBO#551111)
James P. Ponsetto (BBO# 556144)
GREENBERG TRAURIG, LLP[2]
One International Place
Boston, Massachusetts 02110
Tel: (617) 310-6000
Fax: (617) 310-6001

bos-fs1\189317v03

[2] A motion to admit Messrs. Davis and Ponsetto *pro hac vice* is pending.

**CERTIFICATE OF SERVICE**

I hereby certify that the Defendants' Motion For Temporary Restraining Order, An Order To Show Cause Why A Preliminary Injunction Should Not Issue Against Plaintiff, And For An Order For Expedited Discovery, Defendants' Memorandum of Law in Support thereof, and all supporting papers, were served on counsel for the Plaintiffs in this action, by hand delivery and facsimile on April 28, 2006.

Bruce W. Gladstone, Esq.
CAMERON & MITLEMAN LLP
56 Exchange Terrace
Providence, RI 02903

Edmund J. Ferdinand, III, Esq.
GRIMES & BATTERSBY, LLP
488 Main Avenue, 3rd Fl.
Norwalk, Connecticut 06851-1008

Steven E. Seasly, Esq.
HAHN, LOESER & PARKS
3300 BP Tower
200 Public Square
Cleveland, Ohio 44114

Christopher J. O'Connor
Christopher J. O'Connor, Esq.