UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **K&M INTERNATIONAL, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**RHODE ISLAND NOVELTY, INC. and WILD ADVENTURES, INC.,**<br><br>**Defendants.** | **C.A. No: 06-159-ML-DLM** |

**AFFIDAVIT OF ANDY ALBERTO IN SUPPORT OF RHODE ISLAND NOVELTY'S MOTION FOR TEMPORARY RESTRAINING ORDER, AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE AGAINST PLAINTIFF AND FOR AN ORDER FOR EXPEDITED DISCOVERY**

I, ANDY ALBERTO, on my oath depose and say as follows:

1. I currently am employed by the Defendant/Plaintiff-in-counterclaim, Rhode Island Novelty, Inc. ("RINCO") as a sales manager. Except as otherwise noted, the statements of fact contained herein are made upon my own personal knowledge.

2. I am a former employee of K&M International located in Twinsburg, Ohio ("K&M").

3. K&M distributes and markets a line of nature toys under the name "Wild Republic." K&M is the dominant supplier of toys and related items in the so-called "ZMA market," which is an acronym for zoos, museums and aquariums.

4. The ZMA market is an established market for educational items which include, but are not limited to, plush toys (stuffed animals and toys), such as snakes and

long-arm monkeys; nature tubes (plastic tubes containing animal and other toy figures); pinchers (toys with movable animal heads on a cylindrical tube); paint and play sets; and related products.

5. I worked for K&M as an account executive after college between 1998 and 2005 and focused my sales effort in the ZMA market.

6. I voluntarily resigned my position at K&M on September 16, 2005.

7. On or about October 4, 2005, I commenced my employment with RINCO as a Sales Manager.

8. It is my understanding that prior to joining RINCO, RINCO established the "Wild Adventures" product line. RINCO used "Wild Adventures" as a trade name to market and promote its distinct line of wildlife-related products to the ZMA and other markets. RINCO's "Wild Adventures" product line includes plush toys, such as snakes and long-arm monkeys, nature tubes, figurines, pinchers, pens, key chains, balls, puzzles, action toys, paint kits and play sets.

9. Although RINCO sold to the ZMA market long before establishing "Wild Adventures" trade name and product line, the ZMA market historically accounted for only a small amount of RINCO's sales.

10. I had no involvement in establishing the "Wild Adventures" name or related product line.

11. I was hired only in a sales capacity by RINCO.

12. On November 15, 2005, K&M filed a lawsuit against me in the Court of Common Pleas, Summit County, Ohio, CA No. 2005-11-6769 (the "Ohio Action") alleging that I violated a non-competition agreement and a confidentiality agreement I had with K&M in connection with his employment by RINCO. RINCO was not named as a defendant in the Ohio Action. I defended the Ohio Action.

13. On or about December 15, 2005, I ceased my employment for RINCO.

14. K&M and I agreed to a judgment in the Ohio Action on or about January 5, 2006. Neither party admitted facts alleged by the other in connection with the agreement for judgment. Pursuant to the agreement for judgment in the Ohio Action, I was permitted to return to work for RINCO as an employee as of April 15, 2006.

15. I returned to work as a Sales Manager for RINCO on April 17, 2006. I did not work for RINCO between December 15, 2005 through April 17, 2005.

16. I did not impart any confidential information to RINCO regarding K&M.

17. Since April 17, 2006, I have been involved in daily sales activity for RINCO targeted at the ZMA market. I have obtained the names and numbers of prospective customers through the Internet and other publicly available sources. These sources are completely independent of K&M.

18. I supervise two RINCO sales associates.

19. Based on my years of experience, over half of a distributor's annual sales in the ZMA market are generated during the period between March and June (the "Main

Sales Period"). Thus, the vast majority of customers place orders in the Main Sales Period for the current year. This is the critical sales period because of the overall seasonal nature of the business within this market.

20. There are over four-hundred zoos, museums and aquarium shops in the ZMA market, plus countless toy stores and other retailers that sell goods typically sold to zoos, museums and aquariums.

21. Shortly after I commenced my sales efforts for RINCO, I learned about this lawsuit, which had been filed by K&M in Rhode Island. My understanding is that K&M claims that RINCO allegedly violated K&M's trademark and copyrights, among other allegations (the "Lawsuit").

22. On or about April 18, 2006, I learned from a customer, Steve Fairchild at the Sedgwick County Zoo in Kansas, that K&M had sent a letter to him describing the Lawsuit and alleging generally that RINCO was engaged in improper business practices (the "K&M Letter").

23. This was the first of numerous sales calls since April 17, 2006, where customers and prospective customers of RINCO in the ZMA Market mentioned to me that they had received the same letter from K&M within the last few weeks.

24. Since April 17, I have communicated with eight customers in the ZMA market, *each* of which disclosed that they received a copy of the K&M Letter. In no case, did I ask any of them if they had received the K&M Letter; rather, each of them told me about the K&M Letter unsolicited.

25. The K&M Letter is causing RINCO to lose business and new business opportunities.

26. The zoo souvenir shop at Beardsley Zoo in Bridgeport, Connecticut, which had previously placed sales orders with RINCO to purchase products in its "Wild Adventures" line before I commenced my employment in April, cancelled orders representing approximately $4,000 in business just after Rose Ryan, a purchasing agent for the Beardsly Zoo, disclosed to me on or about April 19, 2006, that she received the K&M Letter. She told me, in substance, that she did not want to be involved in any litigation related to the sale of RINCO's products.

27. Other customers who have received the K&M Letter have disclosed, in substance, that they are not prepared to place business with RINCO since they have received the K&M Letter. Just today, I was scheduled to meet with a buyer at the Southwick Zoo in Massachusetts. I called her to confirm the sales appointment. She said in substance that she was not happy about the situation with K&M. When I asked what she meant, she said, "you know what I'm talking about; you're using K&M's logo." She confirmed that she received the K&M Letter.

28. In another case, a buyer affiliated with the EcoTarium, a zoo, museum and nature center in Worcester, Massachusetts, told me in connection with a sales call on April 21, 2006, that that she received the K&M Letter and had to think about whether, under the circumstances, it was appropriate to buy products from RINCO.

29. I have not met or talked to a prospective customer in ZMA market since I started with RINCO on April 17, 2006, who has not mentioned that they received the

K&M Letter and were concerned about the allegations therein. Buyers from the Milwaukee County Zoo, the Zooquarium in West Yarmouth, Massachusetts, the Niabi Zoo in Molene, Illinois, the Baltimore Zoo in Baltimore, Maryland, and the Great Plains Zoo in South Dakota, in addition to the buyers listed above, all disclosed to me that they had received the K&M Letter within the past few weeks.

30. A buyer at the Niabi Zoo finally sent me a copy of the K&M Letter on April 25, 2006. A true copy of that letter that she forwarded to me is attached to my affidavit as Exhibit A. That was the first time I had seen the letter.

31. My sales efforts on behalf of RINCO in the ZMA market are being significantly and negatively impacted by the K&M Letter and the false light in which it places RINCO and "Wild Adventures." RINCO is not contacting customers "in an effort to sell toys that infringe on K&M's copyright and trademark rights," as the letter says. RINCO has done nothing to confuse the buying public, as K&M suggests. "Wild Adventures" is distinct from "Wild Republic". RINCO's products are staples in the market, are distinctive, and are not copies or "knockoffs" of K&M's products. We are legitimate competitors of K&M.

32. Since RINCO, under the "Wild Adventures" brand and product line is still new to the ZMA market, my sales efforts during the Main Sales Period are critical to furthering the growth of RINCO's reputation and goodwill in the ZMA market. This period is also critical for me to establish and reestablish good relationships with buyers in this market as a new representative of RINCO.

33. RINCO's efforts to establish a solid customer base and goodwill with the "Wild Adventures" product line in the ZMA market is being unfairly impeded by the K&M Letter and the false statements contained therein.

34. On May 1-2, 2006, the Museum Store Association ("MSA") Trade Show is being held in Milwaukee, Wisconsin. I have attended four or five MSA Trade Shows in the past. This annual trade show brings together hundreds of customers and buyers in the ZMA market. According to K&M's website (www. KMtoys.com), K&M will be occupying booth number 437 at the MSA Trade Show. A true copy of the page from K&M's website announcing its participation at the MSA Trade Show is attached to my affidavit as Exhibit B.

35. Given K&M's behavior of late, including the mailing of the K&M Letter to customers, I am concerned that K&M's representatives will continue to publicize the Lawsuit and make false allegations about RINCO and its business practices at the MSA Trade Show. If it does so, such statements will further erode RINCO's business reputation, goodwill and ability to generate new business and keep existing business in the ZMA market.

Signed under the pains and penalties of perjury this 27 day of April, 2006.

Andy Alberto

bos-fs1\5zrd04_.DOC