**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **K&M INTERNATIONAL, INC.,**<br><br>**Plaintiff and**<br>**Defendant-in-Counterclaim,**<br>v.<br><br>**RHODE ISLAND NOVELTY, INC.,**<br><br><br>**Defendant and**<br>**Plaintiff-in-Counterclaim.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **C.A. No: 06-159-ML-DLM** |

**RHODE ISLAND NOVELTY'S MOTION PURSUANT TO FED. R. CIV. P. 42(b) TO BIFURCATE THE ISSUES OF LIABILITY AND DAMAGES FOR DISCOVERY AND TRIAL**

Defendant and plaintiff-in-counterclaim, Rhode Island Novelty, Inc. ("Rhode Island Novelty") hereby moves pursuant to Fed. R. Civ. P. 42(b) for an order of the Court (a) bifurcating discovery and trial of the liability and damages with respect to both K&M International's Complaint and Rhode Island Novelty's Counterclaim, and (b) staying discovery on the damages issues until the liability issues in this case have been adjudicated. In support of this Motion, Rhode Island Novelty relies upon its memorandum of law filed herewith and respectfully requests a hearing to be heard on oral argument. Additionally, Rhode Island Novelty submits a proposed a proposed order for consideration.

WHEREFORE, Rhode Island prays this Court to allow this Motion.

Respectfully submitted,
RHODE ISLAND NOVELTY,
By its attorneys,

William A. Poore (#1436)
Christopher J. O'Connor (# 5078)
POORE & ROSENBAUM
30 Exchange Place
Providence, Rhode Island 02903
Tel: (401) 831-2600
Fax: (401) 831-2220

*And Pro Hac Vice Counsel*

Joseph P. Davis III (BBO# 551111)
James P. Ponsetto (BBO# 556144)
GREENBERG TRAURIG, LLP
One International Place
Boston, Massachusetts 02110
Tel: (617) 310-6000
Fax: (617) 310-6001

**CERTIFICATION**

I hereby certify that the within was mailed to all counsel of record this 15th day of September, 2006:

Bruce W. Gladstone, Esq.
CAMERON & MITLEMAN LLP
56 Exchange Terrace
Providence, RI 02903

Edmund J. Ferdinand, III, Esq.
GRIMES & BATTERSBY, LLP
488 Main Avenue, 3rd Fl.
Norwalk, Connecticut 06851-1008

Steven E. Seasly, Esq.
HAHN, LOESER & PARKS
3300 BP Tower
200 Public Square
Cleveland, Ohio 44114

Christopher J. O'Connor

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **K&M INTERNATIONAL, INC.,**<br>**Plaintiff and Defendant-in-Counterclaim,**<br>v.<br>**RHODE ISLAND NOVELTY, INC.,**<br>**Defendant and Plaintiff-in-Counterclaim.** | **C.A. No: 06-159-ML-DLM** |

**RHODE ISLAND NOVELTY'S MEMORANDUM IN SUPPORT OF ITS MOTION PURSUANT TO FED. R. CIV. P. 42(b) TO BIFURCATE THE ISSUES OF LIABILITY AND DAMAGES FOR DISCOVERY AND TRIAL**

Defendant and plaintiff-in-counterclaim, Rhode Island Novelty, Inc. ("Rhode Island Novelty") hereby moves pursuant to Fed. R. Civ. P. 42(b) for an order of the Court (a) bifurcating discovery and trial of liability and damages with respect to the claims which are the subject of both K&M International's Complaint and Rhode Island Novelty's Counterclaim, and (b) staying discovery on the damages issues until the liability issues in this case have been adjudicated.

## I. INTRODUCTION

The present case arises out of defendant Rhode Island Novelty's entry into the lucrative zoo, museum and aquarium market (the "ZMA market") for toys and other novelty items. Prior to Rhode Island Novelty's entry into the market, the plaintiff, K&M International, Inc. ("K&M"), enjoyed market dominance as a supplier of products to this market, and as a result, was able to extract near monopoly prices. Rhode Island Novelty's entry into the market was a shock to the plaintiff as Rhode Island Novelty offered competitive pricing that was significantly lower than the plaintiff's. Desperate to hang onto its dominance in the market, the plaintiff

started this suit, and shortly thereafter published a letter to the industry containing false representations, statements and assertions concerning Rhode Island Novelty's business practices (the "Deceptive Letter"). (That letter, which is appended as Exhibit A hereto, forms part of the basis of Rhode Island Novelty's counterclaim.)

Rhode Island Novelty denies that any liability lies for the causes of action alleged in the Complaint. The plaintiff is simply attempting to use the judicial process, and its spurious publicity, as a tool to hang on to its dominance of the ZMA market for as long as it can. The plaintiff's real motive is to forestall Rhode Island Novelty's entry into the market, and to unfairly gain intelligence on its competitor. Nowhere is this more obvious than in the plaintiff's latest discovery requests. With its latest 76 requests for documents and things, the plaintiff seeks to obtain volumes of information from Rhode Island Novelty, including, specifically, what may be Rhode Island Novelty's most sensitive competitive information, namely, information concerning its pricing and profitability on a per product basis. A copy of K&M document requests is appended as Exhibit B.

All of the liability issues in this case can be easily severed from the damages issues, and can be tried separately, expeditiously and economically, without prejudice to either party. Moreover, severing of the liability issues from the damages issues will substantially simplify the trial (plaintiff has raised no less than eight separate causes of action), and is likely to avoid numerous discovery disputes and will undoubtedly avoid reams of unnecessary discovery. Most of all, bifurcation will avoid the prejudice inherent in disclosing Rhode Island Novelty's most sensitive information until such time, if ever, as the plaintiff can prove Rhode Island Novelty's liability.

## II. BACKGROUND

The plaintiff, K&M, and the defendant, Rhode Island Novelty, are direct competitors, manufacturing and selling popular plush toys and other toy products for the ZMA market, including wild animal toys such as plush snakes, primates and cats, to name just a few. The plaintiff markets and sells its wild animal and related toys under the WILD REPUBLIC mark. Rhode Island Novelty's newly formed ZMA business sells its lower-priced wild animals and related toys into the ZMA market under the WILD ADVENTURES mark.

The plaintiff was the established player in the ZMA market, extracting near monopoly prices from a market it clearly dominated. The plaintiff was clearly unhappy about Rhode Island Novelty's legitimate entry into the market, an unhappiness that was exacerbated by Rhode Island Novelty's sale of competitive products at lower prices. With its monopoly profits in jeopardy, plaintiff became frantic when the defendant hired one of plaintiff's ex-employees, Andy Alberto ("Alberto"). This suit (and another filed in Ohio to enjoin Alberto from working for Rhode Island Novelty that has since been settled) ensued.

In addition to bringing this suit, and with the intent to curtail Rhode Island Novelty's entry into the market, shortly after filing suit, the plaintiff recklessly went public with its allegations of misappropriation and/or infringement. Specifically, the plaintiff published the Deceptive Letter throughout the ZMA market that contained false representations, statements and assertions regarding Rhode Island Novelty's business practices. This letter has largely had the effect of the preliminary injunctive relief that the plaintiff elected not to pursue, and it forms the gravamen of Rhode Island Novelty's counterclaim against the plaintiff.

## III. PROCEDURAL POSTURE

The parties have both indicated their desire to have this case adjudicated quickly.

Based on the parties' recommendations, the Court has ordered that fact discovery will close on October 27, 2006; expert discovery will be completed by January 19, 2007; and dispositive motions will be filed by February 2, 2007.

Although document requests and interrogatories have been exchanged, no protective order has yet been put in place, and as of this date, documents have yet to be exchanged between the parties.

## IV. ARGUMENT

### A. Bifurcation Is Warranted Under Fed. R. Civ. P. 42(b)

Under Rule 42(b) of the Federal Rules of Civil Procedure, the Court may bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." A Rule 42(b) motion "is a matter peculiarly within the discretion of the trial court." Gonzalez - Marin v. Equitable Life Assur. Soc., 845 F.2d 1140, 1145 (1st Cir. 1988); see 5 J. Moore, J. Lucas & J. Wicker, Moore's Federal Practice ¶ 42.03[1] (3d ed. 1998); and C. Wright & A. Miller, Federal Practice and Procedure § 2388 (1995). In deciding whether to bifurcate, Courts may consider specific factors such as: (1) potential prejudice to the parties; (2) the potential for jury confusion; and (3) the relative convenience and economy which would result from bifurcation. See, e.g. In re Air Crash Disaster at Detroit Metro.Airport, 737 F. Supp. 391, 395 (E.D. Mich 1989). It has been held that only one of these criteria need be met to justify bifurcation. Saxion v. Titan-C-Manufacturing, Inc., 86 F.3d 553, 556 (6th Cir. 1996).

Each of these factors weighs in favor of bifurcating the liability issues from the damages issues in this case.

**1. <u>No Prejudice Results To Either Party From Bifurcation, But Great Prejudice Will Result Absent Bifurcation</u>**

Since the inception of this suit there is a cloud over Rhode Island Novelty's entry into the ZMA market. The Deceptive Letter, filled with false statements, added to that cloud. There is nothing more important to Rhode Island Novelty than the speedy resolution of this matter.

Yet despite the best intentions of the parties, discovery is about to grind to a screeching halt. On July 26, 2006, without any protective order in place, the plaintiff served a staggering 76 separate requests for document and things. The plaintiff's requests call for volumes of documents, many of which contain Rhode Island Novelty's most sensitive confidential information. Indeed, the requests specifically call for information that would be devastating in the hands of a competitor, such as: the identify of numerous of Rhode Island Novelty's customers (Request 4); unit and dollar volume by product (Request 36 & 37); wholesale and retail pricing by product (Request 38); financial statements (Request 49) and, most importantly, profitability on a per product basis since the inception of the product line (Request 39).

Much of the discovery sought by plaintiff is relevant, if at all, only to the damages portion of this case. To search for, gather, review and produce the documents and things responsive to the damages requests will be a Herculean effort. "That the production and synthesis of these materials may ultimately become unnecessary militates in favor of bifurcating the trial of this suit." <u>Novopharm Limited v. Torpharm</u>, 181 F.R.D. 308, 311 (E.D. N.C 1998).

With discovery closing in just six weeks, such an effort is likely to jeopardize the close of discovery, and thus the entire schedule in this case. Delay is highly prejudicial to Rhode Island Novelty as it is being forced to turn over its most sensitive information to a competitor when there is, as of yet, no protective order and no apparent basis for liability. <u>F & G Scrolling Mouse, L.L.C. v. IBM Corp</u>. 190 F.R.D. 385, 391 (M.D.N.C.1999) ("[b]ifurcation of the damage

issues can protect ordinary, but sensitive, business records, at least until liability, if any, is established").

If the matter were bifurcated, these prejudices would be alleviated. Moreover, there would be no prejudice to the plaintiff in bifurcating the matter. Accordingly, Rhode Island Novelty respectfully requests that the Court bifurcate liability and damages on the ground of potential prejudice.

### 2. The Matter Is Sufficiently Complex That Jury Confusion May Result From Trying Numerous Causes Of Action And A Damages Theory For Each

A second factor the Court can consider in deciding whether to bifurcate a matter is the potential for jury confusion. Here the plaintiff's Amended Complaint alleges no less than eight (8) separate causes of action, namely:

a. trademark infringement (WILD REPUBLIC / WILD ADVENTURES);

b. trade dress infringement (alleged virtually identical trade dress);

c. copyright infringement (alleged copying specific toy designs);

d. unfair competition (unspecified acts);

e. tortious interference with contractual relations (hiring ex-employee of plaintiff);

f. tortious interference with business relations (competing by selling goods to plaintiff's customers);

g. unjust enrichment (getting plaintiff's ex-employee and customers); and

h. misappropriation of [unspecified] trade secrets (by hiring ex-employee of plaintiff).

Each of the foregoing causes of action requires separate jury instructions on the measure of damages, and separate proof on the acts and value of those acts. The plaintiff, for example, has claimed that it is entitled to damages for trademark infringement. Typically a jury would have to assess the profits earned as a result of the infringement. See e.g., Jerry's Famous Deli v.

Papanicolaou, 383 F.3d 998, 1004 (9th Cir. 2004). The jury's assessment of such damages simply has no relationship to the liability issues relating to the alleged acts of trademark and copyright infringement, or the unjust enrichment and misappropriation claims, or the tortious interference counts. The case as necessarily presented by the plaintiff is quite complex and very likely to result in jury confusion.

Moreover, Rhode Island Novelty has asserted its counterclaim alleging:

a. Abuse of Process;

b. Unfair Competition;

c. Tortious Interference with Advantageous Relations; and

d. Defamation/ Libel.

And the Rhode Island Novelty counterclaim has its own measure of damages.

It is unlikely that all of these causes of action will survive trial, and thus with bifurcation, not only will the jury be spared the confusion of deciding both liability and damages for so many causes of action, but further, the jury is likely to have to consider many fewer causes of action. Simon v. Phillip Morris Inc., 200 F.R.D. 21, 31 ("[c]ourts can make relatively simple divisions within a single claim, including separating liability issues from those of damages where bifurcation would promote the efficient disposition of the case or simplify a difficult set of issues for the jury.")

Because the potential for jury confusion is so high, Rhode Island Novelty respectfully requests that the Court bifurcate liability and damages on the ground that the complexity of the case has a high potential for jury confusion.

**3. Bifurcation Will Foster Economy By Serving The Interests Of Expediency And Efficient Judicial Administration**

A third factor the Court can consider in deciding whether to bifurcate a matter is the relative convenience and economy which would result from bifurcation. Here, a finding in favor of the defendant on the question of liability will eliminate any need to have a trial on the issue of damages, saving time and expense. See LNC Investments v. First Fidelity, 126 F. Supp. 2d 778, 800 (S.D.N.Y. 2001) (noting "time saving benefit of bifurcation").

It is common to bifurcate issues in intellectual property disputes, such as patent, trademark and copyright cases, undoubtedly due to the complexity of such cases, the lack of any substantial community among the issues, and the hazard that a lengthy and expensive trial on the damages issue presents. See Swofford v. B&W, Inc., 336 F.2d 406, 415 (5th Cir. 1964) (noting that "issues of validity, title, infringement and damages in patent and copyrights cases may be tried separately"). See also Triad Sys. Corp. v. Southeastern Express Corp., 64 F.3d 1330, 1338 (affirming decision to bifurcate copyright and antitrust claims because claims involved "complex bodies of law"). Courts routinely bifurcate damages from liability in cases involving intellectual property disputes such as this. See, e.g., Roulo v. Russ Berrie & Co., 886 F.2d 931, 934-35 (7th Cir. 1989) (copyright and trademark liability claims bifurcated from damages claims); Original Appalachian Artworks v. McCall Pattern, 649 F. Supp. 832, 833 (N.D. GA 1986) (liability on copyright infringement and unfair competition claims tried separately from damages).

Rhode Island Novelty respectfully requests that the Court bifurcate liability and damages on the ground that the result will be a more convenient, manageable, expeditious and economical process for the parties and for the Court.

**B. Discovery On Damages Issues Should Be Stayed**

"One of the purposes of bifurcation under Rule 42(b) is to defer cost of discovery and trial preparation costs pending the resolution of preliminary liability issues... when it is

appropriate to sever the damages ... issues from the trial of the merits of the liability case, discovery on those issues may also be stayed." Novopharm Limited v. Torpharm, 181 F.R.D. 308, 312 (E.D.N.C.1998). Accordingly, in view of the potentially unnecessary expense and effort involved in adjudicating the damages issues before a finding of liability, and taking into account the confidential nature of the financial information sought by the parties here, discovery on damages issues should be stayed pending resolution of all liability issues.

## V. CONCLUSION

For the above reasons, Rhode Island Novelty respectfully prays that the Court bifurcate the damages and liability issues with respect to both K&M's Complaint and Rhode Island Novelty's Counterclaim for separate trials, and to stay discovery on damages pending resolution of the liability issues. A proposed bifurcation order is attached hereto as Exhibit C.

Respectfully submitted,
RHODE ISLAND NOVELTY,
By its attorneys,

William A. Poore
Christopher J. O'Connor

William A. Poore (#1436)
Christopher J. O'Connor (# 5078)
POORE & ROSENBAUM
30 Exchange Place
Providence, Rhode Island 02903
Tel: (401) 831-2600
Fax: (401) 831-2220

*And Pro Hac Vice Counsel*

Joseph P. Davis III (BBO# 551111)
James P. Ponsetto (BBO# 556144)
GREENBERG TRAURIG, LLP
One International Place
Boston, Massachusetts 02110
Tel: (617) 310-6000
Fax: (617) 310-6001

**CERTIFICATION**

I hereby certify that the within was mailed to all counsel of record this 15th day of September, 2006:

Bruce W. Gladstone, Esq.
CAMERON & MITLEMAN LLP
56 Exchange Terrace
Providence, RI 02903

Edmund J. Ferdinand, III, Esq.
GRIMES & BATTERSBY, LLP
488 Main Avenue, 3rd Fl.
Norwalk, Connecticut 06851-1008

Steven E. Seasly, Esq.
HAHN, LOESER & PARKS
3300 BP Tower
200 Public Square
Cleveland, Ohio 44114

Christopher J. O'Connor

**EXHIBIT A**

**K&M International, Inc. Announces Filing of Lawsuit Against Rhode Island Novelty and Wild Adventures to Protect Valuable Intellectual Property Rights**

Dear Customer:

*Several of K&M's customers have approached the Company in the past six months to notify us and express their concerns about the business practices of one of our competitors Rhode Island Novelty and its subsidiary, Wild Adventures, Inc. K&M would like to apologize to each of our customers who have experienced any inconvenience or confusion as a result of our competitor's business practices. As detailed below, K&M is taking steps to eliminate any conduct by Rhode Island Novelty or Wild Adventures that may, in any way, confuse or inconvenience our clients. Once again, K&M offers its sincere apologies to each of our customers who negatively have been affected by our competitor's business practices.*

K&M International, Inc., doing business as Wild Republic, announces that it has filed a lawsuit against Rhode Island Novelty and Wild Adventures in federal court in Rhode Island to protect K&M's valuable intellectual property rights, and to stop Defendants efforts to compete unfairly with K&M in violation of the Copyright Act, the trademark laws and state law.

K&M is a leading designer of high-quality plush and PVC toys bearing the well-known WILD REPUBLIC trademark, among others. K&M, through its Wild Republic division, distributes toys to retail toy stores and gift shops throughout the country and worldwide.

The lawsuit contends that Defendants have resorted to a series of unfair business practices in an effort to compete with K&M in the plush and PVC toy categories, namely the serial imitation and copycatting of the look of K&M's product line, trademarks, copyrights and marketing and promotional materials. Specifically, K&M alleges that in 2005 Defendants established a new division to sell the exact same products as K&M and named it "Wild Adventures," a name that is confusingly similar to K&M's incontestable, federally-registered trademark WILD REPUBLIC. Defendants also had hired K&M's former Account Executive to be the sales manager for Wild Adventures. Wild Adventures now actively solicits business from K&M's existing and potential customers in an effort to sell toys that infringe K&M's copyright and trademark rights. K&M alleges that by these acts Defendants have violated the Copyright Act, the trademark laws and state laws. In the Complaint K&M seeks both injunctive relief and substantial monetary damages.

For further information, please contact Prathap Shanker at 800 800 9678 Ext. 205.

1955 Midway Drive, Twinsburg, Ohio 44087 • 800.800.9678 • 330.425.2550 • Fax 330.425.3777

EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| K&M INTERNATIONAL, INC.,<br>Plaintiff,<br>- against -<br>RHODE ISLAND NOVELTY, INC.,<br>Defendant. | Civil Action No.: 06-159-ML-DLM<br><br>**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff and Defendant-in Counterclaim K&M International, Inc. ("K&M"), by and through undersigned counsel, requests that Defendant, Rhode Island Novelty, Inc. ("RINCO"), make available for inspection and copying all documents and things described herein which are in its possession, custody or control within thirty (30) days of service hereof.

<u>DEFINITIONS</u>

A. For purposes of these requests for production, unless otherwise indicated or unless the context otherwise requires:

1. The term "document" is used in its normally broad sense and encompasses all handwritten, typed, printed, or otherwise visually or orally reproduced materials, whether copies or originals, and irrespective or whether they are claimed to be privileged, within the possession, custody, or control of RINCO, or current or former directors, officers, owners, members, employees, agents, or attorneys of RINCO, including, but not limited to, letters, cables, wires, telegrams, notes, calendars, day timers, memoranda, notes of telephone calls and conferences, and inter-office and intra-office communications of all types; drawings, blueprints,

flow sheets, sketches, block diagrams, charts, notebooks, data operating or maintenance manuals, operating and product specifications, and fabrication sheets; photographs, photographic negatives, movies, videotapes, audiotapes, and recordings; books, catalogs, published material of any kind, and all other writings; assignments, licenses, contracts, agreements, and all other official papers and legal instruments; annual reports, reports to shareholders, and minutes or reports of meetings of directors, officers, or executive boards or committees; advertising or promotional literature and press releases; ledgers, hills, invoices, orders, books, records and files; electronic files in any form, including e-mail communications, floppy disks, magnetic tapes, punched cards, hard disks and computer printouts; and microfilm of documents that may have been destroyed. The term "documents" further includes software and any information in a data base or in machine readable form, even if translation by machine or computer is necessary in order to provide it in a usable form.

2. The term "between" shall be construed to include the word "among" and "among" shall be construed to include the word "between" as necessary to bring within the scope of a request all responses which might otherwise be construed to be outside its scope.

3. The terms "K&M" and "Plaintiff" shall refer to K&M International, Inc., and all individual persons, partnerships or corporations that have controlled, participated in, approved or ratified its acts, including without limitation, all officers, directors, agents, employees, servants, attorneys, parent companies, affiliates, subsidiaries, divisions, sales agents, predecessors or successors in interest and all other representatives and persons in its control or acting on its behalf.

4. The term "you," "your," "Defendant" or "RINCO" shall refer to Defendant Rhode Island Novelty, Inc. and all individual persons, partnerships or corporations

that have controlled, participated in, approved or ratified its acts, including without limitation, all officers, directors, agents, employees, servants, attorneys, parent companies, affiliates, subsidiaries, divisions, sales agents, predecessors or successors in interest and all other representatives and persons in its control or acting on its behalf.

B. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, wherever necessary to bring within the scope of a request any documents, computer data storage and items which might otherwise be construed to be outside its scope.

C. A plural noun shall be construed as a singular noun, and a singular noun shall be construed as a plural noun, wherever necessary to bring within the scope of a request any documents, computer data storage and items which might otherwise be construed to be outside its scope.

D. Definitions provided herein apply to any grammatical variant of the term or phrase definition.

INSTRUCTIONS

1. If you claim that any document or thing requested herein is protected from discovery by any privilege against disclosure, please specify the basis for the privilege or other ground for exclusion and produce a separate list of all such documents, computer data storage and things with your responses hereto. Such separate list shall identify each such document and thing by date, nature and/or type of document or thing, identity of each author(s) or creator(s) (with title and designation), identity of each recipient(s) (with title and designation), the original document/thing and/or any copies, title and subject matter of document or nature of thing, identity of each custodian and/or location of the original document, thing and/or any copies, and the grounds for such claim of privilege.

2. Where the original of any document or thing requested herein is in digital form, including without limitation, PowerPoint presentations, the request shall include both digital copies and hard copies.

3. Where any document or thing requested herein is accompanied by or in any manner references an attachment, presentation, exhibit, or notes, the request shall include copies of such attachment(s), presentation(s), exhibit(s), or notes.

4. If you claim that any document or thing requested herein has been lost or destroyed, please specify the nature of the document, the circumstances of its absence, and produce a separate list of all such documents, computer data storage and things with your responses hereto.

**REQUESTS FOR PRODUCTION**

1. All documents in your possession which refer, relate, or pertain to Andrew Alberto.

2. Andrew Alberto's personnel file.

3. All documents which refer, relate, or pertain to Andrew Alberto's employment with RINCO.

4. All documents, including but not limited to, all sales orders, purchase orders, invoices, bills, receipts of sale, and any other financial data, which refer, relate, or pertain to any sales solicited and/or consummated by Andrew Alberto to prospective and/or current customers of RINCO from September 30, 2005 to the present.

5. All documents and things identified in RINCO's responses to K&M's First Set of Interrogatories.

6. A list of all current and prospective customers serviced by Andrew Alberto on behalf of RINCO from his date of hire to the present.

7. All documents which refer, relate, or pertain to any business income, bonuses, benefits, expenses, legal fees, and/or sales commissions earned and/or received by Andrew Alberto from RINCO from the beginning of 2005 to the present.

8. All documents constituting, evidencing, and/or relating to any business income, profits, sales, commissions, orders, or any other revenue received and/or earned by RINCO in 2005 and 2006 as a result of Andrew Alberto's employment with RINCO.

9. All documents which refer, relate, or pertain to the termination of Andrew Alberto's employment with Plaintiff K&M on or about September 30, 2005.

10. All documents which refer, relate, or pertain to any communications, meetings, sales calls, or any other business contact that Andrew Alberto had with Connecticut's Beardsley Zoo or any of its subsidiaries, divisions, affiliated companies, agents, employees, directors, officers, or shareholders on behalf of RINCO from September 30, 2005 to the present.

11. All documents which refer, relate, or pertain to any communications, meetings, sales calls, or any other business contact that Andrew Alberto had with the Brandywine Zoo or any of its subsidiaries, divisions, affiliated companies, agents, employees, directors, officers, or shareholders on behalf of RINCO from September 30, 2005 to the present.

12. All documents which refer, relate, or pertain to any communications, meetings, sales calls, or any other business contact that Andrew Alberto had with the St. Louis Zoological Society or any of its subsidiaries, divisions, affiliated companies, agents, employees, directors, officers, or shareholders on behalf of RINCO from September 30, 2005 to the present.

13. All documents which refer, relate, or pertain to any communications, meetings, sales calls, or any other business contact that Andrew Alberto had with the Chicago Zoological Society or any of its subsidiaries, divisions, affiliated companies, agents, employees, directors, officers, or shareholders on behalf of RINCO from September 30, 2005 to the present.

14. All documents which refer, relate, or pertain to any communications, meetings, sales calls, or any other business contact that Andrew Alberto had with the Milwaukee County Zoo or any of its subsidiaries, divisions, affiliated companies, agents, employees, directors, officers, or shareholders on behalf of RINCO from September 30, 2005 to the present.

15. All documents which refer, relate, or pertain to any communications, meetings, sales calls, or any other business contact that Andrew Alberto had with the Henry Doorly Zoo – Gift Shop or any of its subsidiaries, divisions, affiliated companies, agents, employees, directors, officers, or shareholders on behalf of RINCO from September 30, 2005 to the present.

16. All documents which refer, relate, or pertain to any communications, meetings, sales calls, or any other business contact that Andrew Alberto had with any of K&M's current and/or prospective customers (that Alberto serviced as a former employee of K&M) on behalf of RINCO.

17. All documents, including but not limited to any and all sales orders, purchase orders, invoices, bills, receipts of sale, and any other sales information, which refer, relate, or pertain to any communications, meetings, sales calls, and any other business contact that

Andrew Alberto had with any of K&M's current and/or prospective customers on behalf of RINCO from September 30, 2005 to the present.

18. All documents which refer, relate, or pertain to any non-competition and/or confidentiality agreements that Andrew Alberto entered into with K&M.

19. All documents which refer, relate, or pertain to K&M's confidential information, including but not limited to: information relating to K&M's operation, product, finances (profit and cost ratios), trade secrets, pricing information, accounting practices, sales, personnel, formulas, processes, manufacturing techniques, customer information (call reports, customer lists, prospect lists, and customers' names and addresses), confidential computer software, equipment specifications, marketing plans and techniques, sales plans and techniques, research and development plans and data, and production plans and data.

20. All documents which refer, relate, or pertain to any communications, meetings, or other business contact that Andrew Alberto had with Mr. Bob Nowak, President of RINCO, between August 1, 2005 and October 31, 2005.

21. Andy Alberto's wage information, including W-2's, paycheck stubs, commission statements, and any other wage-related information.

22. A copy of Bob Nowak's cell phone records from August 1, 2005 to October 31, 2005.

23. A copy of Bob Nowak's cell phone records from January 5, 2006 to April 15, 2006.

24. A copy of Andrew Alberto's cell phone records from August 1, 2005 to October 31, 2005.

25. A copy of Andrew Alberto's cell phone records from January 5, 2006 to April 15, 2006.

26. All documents which refer, relate, or pertain to any communications, meetings, or other business contact that Andrew Alberto had with anyone employed by RINCO or acting on its behalf, between January 5, 2006 and April 15, 2006.

27. All documents, things and evidence that RINCO intends to introduce at any trial, hearing or in connection with any dispositive motion in this action.

28. All documents and things provided to or received from any person, including but limited to any witness or potential witness, in connection with the present action.

29. All documents and things provided to or received from any expert witness or consultant retained by RINCO in connection with the present action.

30. All documents which refer, relate or pertain to RINCO's adoption and selection of the trademark "Wild Adventures."

31. Representative samples of labels, tags, packaging, or containers, showing any and all uses of the trademark "Wild Adventures" by RINCO or its authorized licensees or affiliates since its initial adoption.

32. All documents referring or relating to or tending to show how the trademark "Wild Adventures" has been used, advertised or promoted in the U.S. by RINCO or its authorized licensees or affiliates since the date of its initial adoption, including brochures, newspaper articles, advertisements, magazine or trade journal articles, Internet advertising and promotion, and radio or television advertisements.

33. All documents evidencing, relating or referring to authorizations or agreements with third parties involving the trademark "Wild Adventures" or any variation thereof, including but not limited to, all licenses, franchise agreements or manufacturing agreements.

34. Produce a sample of each and every advertisement, marketing, promotional or point of sale material printed, published or disseminated by or on behalf of RINCO or its authorized licensees or affiliates depicting the trademark "Wild Adventures" since the date of its initial adoption.

35. Produce a sample of each product listed in the 2006 "Wild Adventures" catalog.

36. For each product listed in the 2006 "Wild Adventures" catalog, documents sufficient to show the volume of sales in dollars for each year since the introduction of each such product.

37. For each product listed in the 2006 "Wild Adventures" catalog, documents sufficient to show the volume of sales in units for each year since the introduction of each such product.

38. For each product listed in the 2006 "Wild Adventures" catalog, documents sufficient to show the wholesale and retail price of each product for each year since the introduction of each such product.

39. For each product listed in the 2006 "Wild Adventures" catalog, documents sufficient to show the amount of profit realized by RINCO for each product for each year since the introduction of each such product.

40. For each product listed in the 2006 "Wild Adventures" catalog, documents sufficient to show any projections or forecasts of future sales of products sold by RINCO, its licensees or affiliated entities.

41. For each product listed in the 2006 "Wild Adventures" catalog, documents sufficient to show the identity and location of each customer of any product in the "Wild Adventures" line since the introduction of each such product.

42. Produce a list of all customers in the Zoo, Museum and Aquarium ("ZMA") market contacted by anyone on behalf of RINCO in an effort to sell "Wild Adventures" products.

43. Produce a list of all retail customers outside of the ZMA market contacted by anyone on behalf of RINCO in an effort to sell "Wild Adventures" products.

44. All documents and communications between RINCO, on the one hand, and any customer or potential customer of any "Wild Adventures" product, on the other hand, since January 1, 2005.

45. All documents that refer or relate to any plans by RINCO to expand use of its "Wild Adventures" trademark including, but not limited to, expansion of marketing lines, customer base or geographical areas served.

46. All documents, in any form and without limitation, after January 1, 2005 concerning or reflecting any instance where a customer or potential customer of RINCO's has referred to K&M, K&M's "Wild Republic" brand and/or any of the products sold under K&M's "Wild Republic" brand.

47. All documents, in any form and without limitation, after January 1, 2005 concerning or reflecting any instance where a consumer or individual has referred to K&M, K&M's "Wild Republic" brand and/or any of the products sold under K&M's "Wild Republic" brand.

48. All documents, in any form and without limitation, after January 1, 2005 concerning or reflecting any instance where a customer or potential customer of RINCO's and/or any consumer or individual, has stated, inquired or otherwise expressed a belief that:

(a) RINCO was the manufacturer or source of K&M's "Wild Republic" brand or products;

(b) K&M was the manufacturer or source of RINCO's "Wild Adventures" brand or products;

(c) RINCO was in any way affiliated, connected or associated with K&M, the "Wild Republic" brand and/or any of the products sold under K&M's "Wild Republic" brand; and/or,

(d) RINCO's "Wild Adventures" line was in any way affiliated, connected or associated with K&M, the "Wild Republic" brand and/or any of the products sold under K&M's "Wild Republic" brand.

49. All financial statements (audited and un-audited), financial summaries, annual statements, annual filings, profit and loss statements (audited and un-audited), and

corporate filings prepared by or for RINCO for each year from 2004 to the present.

50. All documents referenced on pages six through eight of RINCO's Initial Disclosures Pursuant to Rule 26(a)(1), dated July 14, 2006.

51. All documents regarding the design and development of each product listed in the 2006 "Wild Adventures" catalog.

52. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's claims are barred in whole in part by the doctrine of laches.

53. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's claims are barred in whole in part by the doctrine of waiver.

54. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's claims are barred in whole in part by the doctrine of estoppel.

55. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's claims are barred in whole in part by the doctrine of unclean hands.

56. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's claims are barred in whole in part by the doctrine of acquiescence.

57. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's claims are barred in whole in part by the doctrine of abandonment.

58. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's claims are barred in whole in part by the doctrine of justification.

59. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's claims are barred in whole in part by the fair use doctrine.

60. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's claims are barred in whole in part by its lack of ownership.

61. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's has not properly registered to acquire its rights.

62. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's claims are barred in whole in part because any infringement is *de minimis*.

63. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's claims are barred in whole in part by the intervening acts of third parties.

64. All documents that refer to, evidence or support RINCO's affirmative defense that K&M's claims are barred in whole in part by the fact that K&M has failed to mitigate its damages.

65. All documents that support RINCO's assertion in paragraph 6 of its counterclaims that "RINCO's sales market traditionally included buyers in the ZMA market."

66. All documents that support RINCO's assertion in paragraph 8 of its counterclaims that "Wildlife Artists and Safari, Ltd. are among other companies which sell similar products in the ZMA market."

67. Documents sufficient to identify each and every trade show at which RINCO, its licensees or affiliates, marketed and promoted its "Wild Adventures" line since January 1, 2005.

68. All documents that support RINCO's assertion in paragraph 27 of its counterclaims that certain orders were cancelled and/or that certain customers indicated they would not do business with RINCO because of the letter K&M mailed to its customers in April 2006.

69. All documents referring or relating to or concerning the allegations of Count One of RINCO's counterclaims, whether or not supportive of such allegations.

70. All documents referring or relating to or concerning the allegations of Count Two of RINCO's counterclaims, whether or not supportive of such allegations.

71. All documents referring or relating to or concerning the allegations of Count Three of RINCO's counterclaims, whether or not supportive of such allegations.

72. All documents referring or relating to or concerning the allegations of Count Four of RINCO's counterclaims, whether or not supportive of such allegations.

73. All documents referring or relating to or concerning the allegations of Count Five of RINCO's counterclaims, whether or not supportive of such allegations.

74. All documents referring or relating to or concerning the allegations of Count Six of RINCO's counterclaims, whether or not supportive of such allegations.

75. All documents concerning the "Wild Adventures" product line related to the claims in K&M's First Amended Complaint and/or RINCO's counterclaims not covered by any prior request.

76. A copy of the hard drive for all computers used by Andy Alberto during his term of employment with RINCO.

Dated: July 25, 2006

K & M INTERNATIONAL, INC

By its Attorneys,

Edmund J. Ferdinand, III
GRIMES & BATTERSBY, LLP
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(203) 849-8300 (Telephone)
(203) 849-9300 (Fax)
*Admitted Pro Hac Vice*

Bruce W. Gladstone (R.I. Bar No. 2643)
CAMERON & MITLEMAN LLP
56 Exchange Terrace
Providence, RI 02903
(401) 331-5700 (Telephone)
(401) 331-5787 (Fax)

Steven E. Seasly
HAHN, LOESER & PARKS
3300 BP Tower
200 Public Square
Cleveland, OH 44114
(216) 621-0150 (Telephone)

**CERTIFICATE OF SERVICE**

I hereby certify that the above document was served on counsel for the Defendant in this action by first class mail, with a courtesy copy sent via electronic means, on July 25, 2006.

Joseph P. Davis, III
James P. Ponsetto
GREENBERG TRAURIG LLP
One International Place
Boston, MA 02110

William A Poore
Christopher O'Conner
POORE & ROSENBAUM
30 Exchange Place
Providence, RI 02903

Edmund J. Ferdinand, III

EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **K&M INTERNATIONAL, INC.,**<br><br>**Plaintiff and Defendant-in-Counterclaim,**<br><br>**v.**<br><br>**Rhode Island Novelty, Inc.,**<br><br>**Defendants and Plaintiff-in-Counterclaim.** | ) | **C.A. No: 06-159-ML-DLM** |

## BIFURCATION ORDER

Defendant and plaintiff-in-counterclaim, Rhode Island Novelty, Inc. ("Rhode Island Novelty"), having moved to bifurcate the issues of liability and damages for discovery and trial, and the Court having considered the arguments advanced by Rhode Island Novelty in support of bifurcation and by K&M International, Inc. against bifurcation, and the Court having ultimately concluded that bifurcation will (a) promote convenience, economy and simplicity, (b) serve to protect the parties' confidential information, and (c) avoid juror confusion;

NOW, THEREFORE, the Court hereby enters the following order:

Discovery and trial of liability and damages with respect to all claims which are the subject of both K&M International's Amended Complaint and Rhode Island Novelty's Counterclaim (collectively, the "Claims") will be bifurcated pursuant to Fed. R. Civ. P. 42(b). All discovery on the damages issues concerning the Claims will be stayed until the liability issues in this case have been adjudicated.

The Court will enter a further order at the close of the liability phase of the proceeding, to the extent necessary, which addresses the discovery and liability phase of the case with respect to damages.

DATED this _______ day of ______, 2006

UNITED STATES DISTRICT COURT

_________________________________

United States District Judge