**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| K&M INTERNATIONAL, INC.,<br>Plaintiff,<br>- against -<br>RHODE ISLAND NOVELTY, INC.,<br>Defendant. | Civil Action No.: 06-159-ML-DLM |

**PLAINTIFF K&M INTERNATIONAL INC.'S MEMORANDUM OF LAW:**

**IN OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE THE ISSUES OF LIABILITY AND DAMAGES FOR PURPOSES OF DISCOVERY AND TRIAL**

**AND**

**IN SUPPORT OF EMERGENCY CROSS-MOTION TO COMPEL DISCOVERY ON THE ISSUE OF DAMAGES**

Plaintiff and Defendant-in-Counterclaim, K&M International, Inc. ("K&M"), respectfully submits this memorandum of law in opposition to Defendant, Rhode Island Novelty, Inc.'s ("RINCO"), motion to bifurcate the liability and damages phases of the case and to order separate trials pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, and in support of its companion emergency cross-motion to compel discovery on the issue of damages that RINCO has heretofore refused to provide in reliance upon its motion to bifurcate.

## I. PRELIMINARY STATEMENT

Opposition to Motion to Bifurcate

RINCO's motion to bifurcate is an exercise in Orwellian doublespeak. RINCO portrays itself as the aggrieved party in this litigation by virtue of K&M's letter to customers apprising

them of the filing of the instant lawsuit (the "K&M Letter"), when in fact it is K&M who has suffered greatly at the hands of RINCO. Indeed, by virtue of RINCO's serial imitation and copycatting of the look of K&M's entire product line, trademarks, copyrights and marketing and promotional materials, as well as the hiring of K&M's former sales executive – which has given RINCO access to K&M's proprietary pricing and other confidential information – K&M has suffered significant damage to its business and the goodwill related thereto. RINCO's efforts have regrettably achieved their desired objective. K&M has received orders for RINCO's "Wild Adventures" products, proving that retail customers are now totally confused as to the source of origin of the parties' trademarks and products.

Moreover, RINCO claims that time is of the essence and represents that it wants to proceed to trial as quickly as possible. Yet RINCO's dilatory actions in filing this motion just six weeks prior to the close of fact discovery and its concomitant refusal to provide important damages information until the Court rules on this motion confirm that, in reality, RINCO's intent is to delay the ultimate resolution of the case, not to streamline it.

As set forth below, RINCO's motion should be denied for the following reasons:

- In its moving papers, RINCO has vastly overstated the nature of the documents and information that it seeks to shield from discovery at this point. Indeed, the only documents that RINCO seeks to avoid producing at this point are its profit figures for sales of the accused toy lines. All other information, including the wholesale price and sales figures for each toy, will be produced subject to a Protective Order under negotiation. On balance, therefore, it appears far more convenient and expedient for RINCO to produce its profit information now so that the parties can complete discovery in a single phase, as opposed to having a separate damages phase and a second jury trial on damages at a later date.

Indeed, K&M would suffer substantial prejudice should it prevail on the issue of liability and then be forced to proceed to a second trial on the issue of damages. For example, K&M would need to re-depose certain of RINCO's fact witnesses on damages issues following the first trial. Moreover, all of K&M's witnesses and the two law firms that are acting as trial counsel are from out of state. These individuals would need to travel to Providence a second time for a damages trial, which would significantly increase K&M's trial costs. A second trial would also unnecessarily burden both the Court and the jury system, because the Court would likely need to empanel a new jury for a damages trial occurring months after the liability phase. Accordingly, any limited efficiencies that may result from staying the damages portion of the case until after a liability trial appear to be clearly outweighed by the certain repetition of testimony from the parties' fact witnesses (many of whom are from out of state) and the increased expense and inefficiency that results from separate trials.

- This is not a complex patent case where the damages calculations necessarily involve complex and multi-faceted considerations. Nor is this a personal injury case where the jury is likely to be improperly swayed by damages evidence. Rather, this is a straightforward business torts case. While the case involves a number of different intellectual property and common law causes of action, all such claims share the common elements of an award of RINCO's profits from the accused toy lines and/or the damages K&M has suffered. The damages portion of the trial will likely last no more than three to four trial days. Given that the overall trial will last at least two to three weeks, the damages portion can be incorporated seamlessly into the overall trial, as is the case with virtually all other civil trials. As such, a single trial on all issues will not unduly delay submission of the case to the jury.

- While RINCO claims to be concerned about disclosing its profit information to K&M

because of the sensitive commercial nature of such information, that issue is easily solved because RINCO can simply designate all such information as "Confidential – Available to Counsel Only" pursuant to the Protective Order that the parties are currently negotiating.

- The delay in filing this motion should weigh heavily against RINCO in the balancing of interests. The Court's Scheduling Order provides for fact discovery to close on October 27, 2006. RINCO waited until August 25, 2006, the date when its discovery responses were due, to raise the issue of bifurcation for the first time. This issue could have and should have been raised at the Rule 16 Conference in late June to avoid any conflict with the Scheduling Order. RINCO then took twenty additional days to get its motion papers on file with the Court. The timing of RINCO's motion, coupled with RINCO's refusal to disclose its profit figures until the Court rules on this motion, has resulted in substantial tension with the current Scheduling Order and jeopardizes the likelihood that the parties can proceed to trial in an expeditious manner.

In sum, piecemeal litigation, and in particular a separate discovery period to commence after a jury trial on liability, with a subsequent second jury trial on damages, as RINCO advocates, would surely contravene the Court's and the parties' interest in convenience, efficiency and exigency. Accordingly, K&M respectfully urges the Court to deny RINCO's motion in all respects.

<u>Emergency Motion to Compel Production of Profit Figures</u>

Because RINCO has also taken the position that it will not produce its profit figures for the accused toy lines until the Court resolves the instant motion, K&M is left with no choice but to seek the Court's intervention on an emergency basis to compel production of such documents and information. Such swift action is needed to ensure that the parties comply with the current Scheduling Order in all respects, and to avoid any unnecessary delay.

## II. FACTUAL BACKGROUND

K&M is a leading designer of high-quality plush and PVC toys bearing the well-known WILD REPUBLIC house trademark, among others. K&M, through its Wild Republic division, distributes toys to retail toy stores and gift shops throughout the country and worldwide, with a particular emphasis on zoos, museums and aquariums (the "ZMA Market").

RINCO is a wholesale distributor of novelty toys. RINCO admits that it is a "direct competitor" of K&M's in the same markets and to the same class of retail customers. (RINCO Mem. at 3).

In 2005, RINCO sought to enter into the ZMA Market, a market long dominated by K&M. (RINCO Mem. at 1, 3). Unfortunately, RINCO resorted to a series of unfair business practices to expedite its entry into the ZMA Market, including, but not limited to:

- RINCO began selling the exact same product lines and products as K&M (at a lower cost) using the house trademark WILD ADVENTURES, a name that is confusingly similar to K&M's incontestable, federally-registered trademark WILD REPUBLIC. K&M alleges that this conduct constitutes trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114 and the common law.

- RINCO deliberately and willfully imitated and copied the look of K&M's entire product line and many of the products contained in each line, as well as K&M's trademarks, copyrights and marketing and promotional materials. RINCO now actively solicits business from K&M's existing and potential customers in the ZMA Market in an effort to sell toys that infringe K&M's copyright and trade dress rights. K&M alleges that this conduct constitutes trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a) and the common law;

copyright infringement under 17 U.S.C. § 101, *et seq*. and unfair competition under state law and the common law.

- RINCO hired K&M's former ZMA Account Executive, Andrew Alberto, to be the sales manager for the "Wild Adventures" line. Upon information and belief, Mr. Alberto disclosed and used K&M's trade secrets and confidential information to develop RINCO's business with the ZMA Market. K&M alleges that by its actions RINCO is liable for tortious interference with contract and business relations, misappropriation of trade secrets and unjust enrichment under the common law.

## III. PROCEDURAL HISTORY

K&M commenced this action by filing a Complaint against RINCO for trademark, trade dress and copyright infringement, as well as state law claims for unfair competition and others, on April 5, 2006. (Docket Index ("D.I.") No. 1).

RINCO filed an Answer and Counterclaims on April 26, 2006. The Answer contained general denials and affirmative defenses, while the Counterclaims were all directed in whole or in part to the K&M Letter. (D.I. No. 6). Two days later, on April 28, 2006, RINCO filed a motion for temporary restraining order and an order for expedited discovery related to the K&M Letter. (D.I. No. 7). Judge Smith swiftly denied RINCO's motion in all respects.[1] (D.I. No. 9).

The Court held a Rule 16 Preliminary Conference on June 28, 2006, the purpose of which was to address any discovery issues and to set a Scheduling Order to govern the case going forward. RINCO's counsel never once addressed the issue of bifurcating liability and damages during the Court conference.

[1] Since the mailing of the K&M Letter to K&M's ZMA Market customers was already complete as of April 28, 2006, K&M agreed to cease any further efforts to send the K&M Letter to its ZMA Market customers during oral argument of RINCO's motion.

On July 5, 2006, the Court entered a Scheduling Order which provided for, *inter alia*, fact discovery to close on October 27, 2006. (D.I. No. 16).

On July 19, 2006, K&M filed an Amended Complaint to add a claim for trade secret misappropriation against RINCO. (D.I. No. 19).

On August 21, 2006, in anticipation of receiving RINCO's responses and objections to K&M's first set of document requests and first set of interrogatories, K&M furnished RINCO with a draft Protective Order to govern disclosure of the parties' confidential information and documents in this proceeding. RINCO responded with a counterproposal almost one month later, on September 19, 2006. The parties are close to finalizing the terms of the Protective Order and expect to file the order for the Court's review and approval shortly.

On August 25, 2006, RINCO served its written responses and objections to K&M's first set of interrogatories and first requests for production. On that date, RINCO for the first time indicated its intent to move to bifurcate the liability and damages portions of the case. RINCO also objected to K&M's discovery requests seeking documents and information related to the profits realized by RINCO from sales of the accused toy lines, on the ground that it would provide such information only "consistent with, and after a ruling on, RINCO's Motion to Bifurcate." (*See* RINCO's Objections to Document Request No. 39 and Interrogatory No. 6, attached hereto at Tab A).

K&M's counsel informed RINCO's counsel that K&M would not consent to RINCO's proposed motion to bifurcate the liability and damages portions of the case on August 28, 2006.

RINCO filed the instant motion three weeks later, on September 15, 2006.

The parties have each produced documents to the other. K&M has produced in excess of 17,000 pages of documents to this point. The parties expect to complete their respective

document productions (except for the documents in dispute on this motion), once the parties' Protective Order has been approved by the Court.

No depositions have been taken as of yet. K&M has served deposition notices and subpoenas on approximately six of RINCO's witnesses. K&M intends to complete these depositions prior to the close of discovery on October 27, 2006.

## IV. ARGUMENT

### BIFURCATION OF LIABILITY AND DAMAGES WOULD CONTRAVENE THE INTERESTS OF CONVENIENCE, EXPEDITION AND JUDICIAL ECONOMY

RINCO claims that bifurcation of liability and damages is warranted because it would promote judicial economy and convenience for the parties. (RINCO Mem. at 2, 5). RINCO's arguments in this regard assume, of course, that it will prevail during the liability portion of the case. But the Court is not in a position to make such a determination at this time without the benefit of a full record, which RINCO has not even attempted to submit. The Court must also consider the possibility that K&M will prevail at trial. Under RINCO's proposed plan, following a verdict by K&M on the issue of liability for any of the eight causes of action in the Amended Complaint, the parties would need to proceed to a second discovery phase related to damages, and then to a second jury trial (likely before a different jury). With that in mind, it is apparent that RINCO cannot carry its burden to show that bifurcation will benefit the parties and the Court. Indeed, on balance requiring RINCO to produce its profit information at this time appears far more expedient, convenient and efficient than requiring the parties to undertake a separate discovery phase and proceed to trial a second time.

#### A. Legal Standard

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, the Court may order separate trials "in furtherance of convenience or to avoid prejudice, or when separate trials will

be conducive to expedition and economy. . . ." The decision to bifurcate "is committed to the sound discretion of the court," but it is "not to be routinely ordered." *Data General v. Grumman Systems Support Corporation*, 795 F. Supp. 501, 503 (D. Mass. 1992) (bifurcation inappropriate in jury case where issues of liability and damages would likely overlap; case should be tried as a whole to the same jury), *aff'd*, 36 F.3d 1147 (1st Cir. 1994). The Court makes the bifurcation decision on a case by case basis. *Laitram Corporation v. Hewlett-Packard Company*, 791 F. Supp. 113, 114 (E.D. La. 1992) (motion for separate trials with separate discovery periods denied where delays resulting from bifurcation posed a risk of prejudice to plaintiff; discovery on all issues to continue in one phase). The moving party bears the burden of proving that bifurcation is warranted. *Thorndike v. DaimlerChrysler Corp.*, 220 F.R.D. 6, 8 (D. Me. 2004) (issues of liability and damages would not be bifurcated where issues were interrelated and bifurcation would result in the potential confusion of issues, repetition of testimony and increased expense and inefficiency).

In making this determination, a "major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *In Re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) (bifurcation of two separate theories of liability (not damages) upheld where case involved complicated issues and the standard practice, as evidence by citation to twenty-three cases, was to separate for trial patent issues and those raised in antitrust counterclaim), *citing*, 9 C. Wright & A. Miller, Federal Practice and Procedure § 2388 (1971). Prejudice is also a major component of assessing whether to order separate trials. *Laitram Corporation*, 791 F. Supp. at 115 ("even if bifurcation might somehow promote judicial economy, courts should not order separate trials when 'bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice"; prejudice is the Court's most

important consideration; separate discovery phases would unduly prejudice plaintiff by unreasonably delaying end of case).

Against this backdrop, it is evident that the factors to be considered – prejudice to the parties, judicial economy, the convenience of the parties and confusion of the issues - all weigh in K&M's favor.

**B. K&M Will Suffer Prejudice if Bifurcation is Granted, and Bifurcation Will Contravene the Interests of Efficiency and Judicial Economy**

1. Damages Discovery Should not be Delayed or Stayed

RINCO's arguments in favor of bifurcation fall of their own weight. RINCO argues that bifurcation is warranted because "discovery is about to grind to screeching halt" as a result of K&M's service of a set of document requests that included, *inter alia*, requests seeking documents and information related to the issue of damages. (RINCO Mem. at 5). In fact, the only information that RINCO is seeking to shield through this motion are profit figures for the accused toy lines. (*See* Tab A, Document Request No. 39 and Interrogatory No. 6). Importantly, RINCO has agreed to produce all other information within its possession that relates to damages, including the wholesale price and sales figures for all of the accused toy lines. (*See* Tab A, Document Request Nos. 38, 40 and Interrogatory Nos. 5, 7). In reality, discovery is proceeding according to the Scheduling Order. The parties have each exchanged written discovery responses and documents. The remainder of the parties sensitive commercial documents will be exchanged following the entry by the Court of the parties' Protective Order. Thus, but for RINCO's ill-timed motion to bifurcate, there would have been no concern about completing all discovery in accordance with the Court's Scheduling Order.[2]

Second, RINCO's expresses grave concerns about having to produce sensitive

---

[2] As set forth in Section V, below, K&M maintains that the parties can still complete all fact discovery by October

commercial information to K&M, a "direct competitor." (RINCO Mem. at 3, 5). RINCO claims that the disclosure of such information would be "devastating in the hands of a competitor." (*Id.*) In this regard, K&M agrees with RINCO that there is certain commercially sensitive information that must be shielded from disclosure to the other party. But of course the parties' Protective Order will address that precise issue. The Order provides for a category of documents and information that the parties can designate as "Confidential – Available to Counsel Only," thereby ensuring that the documents can be used in the litigation but not viewed by the adverse party. As a result, the disclosure of commercially sensitive information provides no basis to bifurcate or to stay the discovery phase of the case.

2. K&M Will Suffer Prejudice from Separate Trials and Separate Trials do not Promote Efficiency, Convenience or Judicial Economy

Courts have held that a party may be prejudiced by the considerable delay that will result if the Court orders separate trials and separate discovery periods. *See Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991) (motion for separate trials and stay of discovery denied where there was overlapping evidence with respect to liability and damages and inevitable delay would result in prejudice to plaintiff); *see also Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1435 (D. Del. 1989) (unreasonable delay in a case's resolution may constitute prejudice to the party opposing separation).

Here, K&M will undoubtedly suffer prejudice from separate trials because separate trials will delay the ultimate resolution of the case and will cause an increased burden on the parties and the Court. RINCO advocates a separate damages discovery phase to commence after a jury finding of liability in K&M's favor. (RINCO Mem. at 2). Under such a scenario, K&M would need to re-depose some of the very same RINCO fact witnesses that it had deposed during the

---

27, 2006 if RINCO is required to produce its damages information to K&M in the next few weeks.

liability phase of the case, adding to the expense for both parties. Moreover, in a second damages trial K&M would seek to elicit testimony from some of the same party witnesses that had testified previously during the liability phase of the case. All of K&M's witnesses are from out of state, as are the two law firms that serve as K&M's trial counsel. Having all of these individuals appear for a second trial in Providence will certainly add to the overall expense of the case for K&M.

Aside from the costs, having a damages discovery phase and a second jury trial following a jury finding on liability will certainly delay the final adjudication of the case. As stated, K&M wants to proceed to trial and obtain a final judgment as soon as possible so as to ameliorate the confusion in the marketplace that is ongoing. No final judgment can issue unless and until the lower court proceedings have been completed and the parties have exhausted their appeal rights. Having a second trial could significantly delay the process depending on the length of time that is needed for the damages discovery phase and the scheduling of the second trial. K&M estimates that the damages discovery phase could possibly take several months because it would involve the disclosure of damages expert reports and subsequent depositions of expert and fact witnesses related to damages. Moreover, scheduling the damages portion of the trial will be entirely dependent on the availability of the Court to conduct a second trial within the parameters of the Court's busy trial docket. Against this backdrop, having the damages portion of the case incorporated into a single trial appears to be the far more efficient and convenient solution, particularly since the damages phase of the trial should last no more than three to four days of what will likely be a three-week jury trial.

On balance, therefore, it appears far more convenient and expedient for RINCO to produce its profit information now so that the parties can complete fact discovery in a single

phase and then proceed to complete expert discovery in accordance with the Court's Scheduling Order, as opposed to having a separate damages phase and a second jury trial on damages at a later date.

While RINCO's suggested bifurcation has limited efficiencies (assuming that RINCO prevails at trial on the issue of liability), such as avoidance of expert discovery on damages, any such limited efficiencies that may result from staying the damages portion of the case until after a liability trial appear to be clearly outweighed by the increased cost and certain delay that would necessarily result from separate trials.

C. There is Little Risk of Jury Confusion on the Issue of Damages

RINCO incorrectly states that courts typically bifurcate the liability and damages portions of trademark and copyright cases.[3] (RINCO Mem. at 8). Bifurcation of liability and damages in trademark and copyright cases is the exception, not the rule. Thus in *Data General Corp. v. Grumman Systems Support Corp.*, 795 F. Supp. 501, 503 (D. Mass. 1992), the Court refused to bifurcate liability and damages in a copyright case involving software:

> I am not inclined to allow bifurcation in a case in which the parties demand trial by jury, the liability portion of the trial will likely be long and complex, and there is a distinct possibility that the issues of damages and liability will overlap. In the interest of fairness to the parties and judicial economy, the case should be tried as a whole to the same jury.

795 F. Supp. at 503.

Bifurcation is more often granted in patent cases, where the issues of liability are highly

---

[3] RINCO's cited authority is not helpful to its cause. *Triad Sys. Corp. v. Southeastern Express Corp.*, 64 F.3d 1330 (9th Cir. 1995), involved a case where the court bifurcated the liability phases for two entirely distinct causes of action (copyright and antitrust). *Roulo v. Russ Berrie & Co.* , 886 F.2d 931 (7th Cir. 1989) and *Original Appalachian Artworks v. McCall Pattern*, 649 F. Supp. 832 (N.D. Ga 1986), each involved cases where the fact that the lower courts bifurcated liability and damages was merely referenced in each decision without explanation or discussion. Therefore, they are not proper authority to rely upon for purposes of this motion.

technical and the damages calculation is exceedingly complex.[4] *See, e.g.*, *Industrias Metalicas Marva, Inc. v. Empresas Lausell*, 172 F.R.D. 1 (D. P.R. 1997). Bifurcation in patent cases is by no means a foregone conclusion, however. As the Court held in *Apollo Computer, Inc.*, 707 F. Supp. at 1434 -1435:

> Speculation aside, defendant appears to be able to point to little in the way of convenience or judicial economy to support its motion. It is undeniable that, if the Court were to bifurcate the trial and defendants were to prevail on the infringement issue, there would be no trial on damages; however, if defendant were to lose on liability, the two trials would end up taking considerably more time than would have been required to reach the same outcome with a single trial. Given the very limited benefit to be derived from bifurcation in this case, the Court is simply not willing to take the gamble that defendant recommends. Defendant's motion will thus be denied.

In any event, this is not a patent case. The case involves trademark and copyright claims, along with state law and common law claims for unfair competition and misappropriation. But at its essence, this is a straightforward case of an alleged business tort. Importantly, all of the claims provide for the jury to award either the damages K&M has suffered, or RINCO's profits on the accused toy lines, or both. *See, e.g.*, 15 U.S.C. § 1117; 17 U.S.C. § 504. These are straightforward calculations based primarily on RINCO's profits (determined by sales less allowable cost deductions) or K&M's losses (based on decreased sales figures, etc.). Unlike patent cases, these are not complex calculations that give rise to a strong risk of jury confusion, as RINCO claims.

D. <u>RINCO's Delay in Filing this Motion Should Weigh in K&M's Favor</u>

RINCO filed this motion just six weeks prior to the close of discovery. Without a

---

[4] Indeed, even the most basic damages award in patent cases – a reasonable royalty on sales of the accused device - involves application of the fifteen factor test set forth in *Georgia-Pacific Corp.* v. *United States Plywood Corp.*, 318 F. Supp 1116 (S.D.N.Y. 1970).

hint of irony, RINCO actually seeks to use that fact as a basis to argue that a stay of discovery is warranted.[5] (RINCO Mem. at 5). In reality, RINCO should have raised the issue of bifurcation months ago at the Court's Preliminary Conference. Both Rule 26 and Local Civil Rule 16 contemplate that such issues will be addressed at initial scheduling conferences so that Scheduling Orders can be set accordingly. As stated, it is the filing of this motion, coupled with RINCO's refusal to produce its profit figures, that has jeopardized the parties' ability to comply with the Court's Scheduling Order in full, and not K&M's initial document requests, as RINCO erroneously asserts.

K&M intends to comply with the Court's Scheduling Order. To that end, K&M expects to take the depositions of all of RINCO's fact witnesses between now and October 27, 2006. In the event the Court denies RINCO's motion to bifurcate after that date and K&M is forced to re-take depositions of any of RINCO's fact witnesses, K&M hereby moves the Court for an application of costs and fees associated with such additional depositions. Courts may order a party to pay the costs of duplicative discovery necessitated by the granting of a motion filed by said party. *See, e.g., InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 112 (6th Cir. 1989) (proper remedy for subjecting a party to duplicative discovery due to amended complaint would be to require moving party to bear a portion of the additional expense); *Brown v. Baeke*, 413 F.3d 1121, 1126 (10th Cir. 2005) (affirming ruling that plaintiffs were required to pay fees and expenses incurred by defendant as a result of duplicative effort that could not be avoided due to plaintiffs' voluntary dismissal and filing of new action); *Cemar, Inc. v. Nissan Motor Corp.*, 678 F. Supp. 1091, 1106 (D. Del. 1988) (ordering plaintiff to reimburse defendant for any duplicative

---

[5] RINCO makes this argument in the context of a supposed Herculean effort required to comply with K&M's discovery demands. As stated above, all such arguments are vastly overstated. RINCO has already produced documents to K&M and is on record stating that the only documents it intends to withhold at this stage are its profit figures.

discovery caused by amended complaint); *Polycast Technology Corp. v. Uniroyal, Inc.*, 728 F. Supp. 926, 944 (S.D.N.Y. 1989) (plaintiffs ordered to pay cost of duplicative discovery to cure prejudice to defendant).

## V. MOTION TO COMPEL

In order to ensure full compliance with the Court's Scheduling Order, K&M also brings this affirmative cross-motion to compel disclosure of RINCO's profit figures for the accused toy lines pursuant to Rule 37(a) of the Federal Rules of Civil Procedure.

K&M's primary goals are to comply with the Court's Scheduling Order and to proceed to a full trial on the merits in an expeditious manner. RINCO has thus far refused to produce documents and information regarding its profits figures. (*See* Tab A, Document Request No. 39 and Interrogatory No. 6). K&M intends to proceed with depositions of RINCO's party witnesses in order to ensure compliance with the Scheduling Order. Absent a ruling from the Court ordering RINCO to produce its damages information, it will be impossible for K&M to complete all fact discovery by October 27, 2006. This is because K&M will be unable to examine RINCO's witnesses at depositions about the profit information. Nor will K&M be able to comply with the due date for its expert report on damages, which currently stands at November 15, 2006. Finally, K&M will not have the benefit of this information prior to the Court-ordered Settlement Conference to take place before Magistrate Judge Lovegreen on October 11, 2006. It will substantially impede the parties' ability to resolve the matter amicably if K&M is unable to assess the proper settlement value of the case.

For these reasons and the arguments set forth in opposition to RINCO's motion to bifurcate, K&M respectfully requests that RINCO be ordered to furnish K&M with responses to Document Request No. 39 and Interrogatory No. 6. Time is of the essence to ensure full

compliance with the Court's Scheduling Order.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, K&M respectfully requests that the Court enter the following relief:

1. an Order denying RINCO's motion to bifurcate in all respects;
2. In the event the Court's ruling occurs after October 27, 2006 and there has been no intervening modification of the Scheduling Order, an Order providing that RINCO be required to pay all costs and fees associated with any depositions of any fact witness that K&M is forced to re-take on the issue of damages; and,
3. an Order requiring RINCO to provide responses to K&M's Document Request No. 39 and Interrogatory No. 6 within five (5) days of the Court's ruling on K&M's Emergency Cross-Motion to Compel Production.

Dated: September 26, 2006

Respectfully submitted,

K & M INTERNATIONAL, INC

By its Attorneys,

Bruce W. Gladstone (R.I. Bar No. 2643)
CAMERON & MITLEMAN LLP
56 Exchange Terrace
Providence, RI 02903
(401) 331-5700 (Telephone)
(401) 331-5787 (Fax)

*Lead Counsel*:

Edmund J. Ferdinand, III
GRIMES & BATTERSBY, LLP
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(203) 849-8300 (Telephone)
(203) 849-9300 (Fax)
*Admitted Pro Hac Vice*

*Of Counsel*:

Steven E. Seasly
HAHN, LOESER & PARKS
3300 BP Tower
200 Public Square
Cleveland, OH 44114
(216) 621-0150 (Telephone)
(216) 241-2824 (Fax)
*Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that the above document was served on counsel for the Defendant in this action on September 26, 2006.

Joseph P. Davis, III
James P. Ponsetto
GREENBERG TRAURIG LLP
One International Place
Boston, MA 02110

William A Poore
Christopher O'Conner
POORE & ROSENBAUM
30 Exchange Place
Providence, RI 02903

Bruce W. Gladstone, Esq.